## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

POSTAL TELEGRAPH–CABLE COMPANY v. FARMVILLE AND POW-
HATAN RAILROAD COMPANY.

JANUARY 26, 1899.

1. CONSTRUCTION OF STATUTES—*Stare Decisis.*—Where a decision has been
followed in other cases, has been long acquiesced in, and become a
rule of property, it is of binding force, and should not be changed
except by legislative enactment. But this rule has no application to a
single decision recently made by a nearly evenly divided court.
2. TELEGRAPH COMPANIES—*Right of Way along Railroads—Condemnation.*—
Under the provisions of secs. 1287, 1288, and 1289 of the Code, a tele-
graph company may have condemned for its use a right of way along
and upon the condemned line of a railroad, but not so as to affect the
railroad company in the enjoyment of its property. *Postal Telegraph-
Cable Co.* v. *N. & W. R. Co.*, 88 Va. 920, disapproved.

Error to a judgment of the County Court of Chesterfield
county rendered at the November term, 1898, on a motion
wherein the plaintiff in error was the plaintiff, and the
defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*J. R. McIntosh*, for the plaintiff in error.

*S. D. Davies* and *T. M. Miller*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Postal Telegraph-Cable Company served notice upon
the Farmville and Powhatan Railroad Company that it would

apply to the County Court of Chesterfield, at its November term, 1898, for the appointment of commissioners to ascertain and report what would be a just compensation to the railroad company for the right to construct, maintain, and operate a telegraph line of the Postal Telegraph-Cable Company along its right of way. The Railroad Company appeared, and, upon its motion, the notice was quashed. Thereupon the Postal Telegraph-Cable Company applied for a writ of error to the judge of the Circuit Court, who refused it, and the case is now before us upon a writ of error.

The judgment complained of is in accordance with the decision of this court in the case of *Postal Telegraph-Cable Company* v. *N. & W. Rwy. Co.* reported in 88 Va. at page 920. Plaintiff in error urges us to enquire into the correctness of that decision; while, upon the part of the defendant, it is earnestly contended that the reported case was correctly decided, and, if it were not, we are bound to adhere to and respect it as an authority binding upon us. We recognize the value of the principle invoked. The rule of *stare decisis* is entitled to the greatest respect, and under our system of jurisprudence is an essential feature of the administration of justice. Where a decision, and especially a line of decisions, has been acquiesced in, where it has been followed in other cases and has become a rule of property, and men have, in the conduct of affairs, learned to respect and conform to it, it becomes of especial, and indeed of binding, force, and should not be disturbed, except by the interposition of legislative power. But we do not consider that the circumstances adverted to as lending force to a judicial interpretation of a statute, and which may be of so strenuous a nature as to preclude further enquiry into the correctness of the adjudication, apply to the case before us. We have here a single judgment followed in no other case, rendered by a bare majority of the court—two of the judges dissenting—and placing a construction upon the statute law involved in it, which, we think, palpably erroneous and con-

trary to public policy, as tending to foster and promote a monopoly.

The sections of the Code to be considered are 1287, 1288, and 1289.   These sections are taken from the act of Assembly found in Acts of 1879–80 at p. 53, and cover substantially the same ground.   The revisors, for the sake of perspicuity and convenience, divided the subject treated of in that statute, and it now appears in the Code in the three sections referred to. These sections are *in pari materia*, and each and all can and should be looked to in order to reach the right interpretation of them.   They are as follows:

Sec. 1287. "Every telegraph and every telephone company incorporated by this or any other State, or by the United States, may construct, maintain, and operate its line along any of the State or county roads, or works, and over the waters of the State, and along and parallel to any of the railroads of the State, provided the ordinary use of such roads, works, railroads, and waters be not thereby obstructed; and along or over the streets of any city, or town, with the consent of the council thereof."

Sec. 1288. "Such company may contract with any person or corporation, the owner of lands, or of any interest, franchise, privilege, or easement therein or in respect thereto, over which such line is proposed to be constructed, for the right of way for erecting, repairing, and preserving its poles and other structures necessary for operating its line, and the right of way for the erection and occupation of offices at suitable distances along its line for the public accommodation."

Sec. 1289. "If the company and such owner cannot agree on the terms of such contract, the company shall be entitled to such right of way upon making just compensation therefor to such owner.   Such compensation shall be ascertained and made, as provided in chapter forty-six, for the acquisition of lands by a company incorporated for a work of internal improvement, when such internal improvement company cannot agree on the terms of the purchase with those entitled to the lands wanted for the purpose of the company.   The title which may be acquired by a telegraph or telephone company under this section shall be only to a right of way for the purposes stated in the preceding section; and no right of way acquired by any such company under this or the preceding section shall be to the exclusion of other like companies from having or acquiring a like right of way over the same lands."

The rules of interpretation which have been established for the guidance of courts in the construction of statutes are cor-

rectly stated in *Postal Telegraph-Cable Co.* v. *N. & W. Rwy. Co.,* *supra.* It will be observed that a telegraph company is authorized by the first section quoted to construct its line along any of the State or county roads, and the case just cited concedes that "along," in that connection, is equivalent to "along and upon" or "on it." In the last clause of this section they are given the right to go along or over streets of any city or town, with the consent of the council thereof. Here, too, "along" has the signification just given it of "along and upon." Of this, there can be no doubt. Here, then, we have in this section the word "along" appearing three times; and the sense in which it is used in the first and third instance is clear and unquestioned. The same meaning, therefore, will be attributed to it elsewhere unless there be something in the context which clearly indicates that the Legislature intended some other and different meaning to attach to it.

It is claimed that this intention is to be found in the phrase "along and parallel to," and that by the use of the words "parallel to," the Legislature intended to restrict the meaning theretofore and thereafter given to the word "along," and to confine the telegraph company to a line following the length of the railway's right of way, but never encroaching upon it. Or, in the language of the court in *Postal Telegraph-Cable Company* v. *N. & W. Rwy Co.,* 88 Va. 920, 927, it is to run in the direction of the railroad line, "alongside of and equidistant from it throughout all its parts, so that neither shall meet or touch; not in nor upon the railroad strip." We are wholly unable to perceive, if this be the true construction, why the Legislature found it necessary to say anything about the railroad. The right which a telegraph company is authorized to acquire would be a matter of indifference to railroad companies if the construction heretofore given by this court were correct, and the mention of them in the statute would be utterly irrelevant; but railroads are mentioned in the statute, and it is to be presumed for a necessary purpose, and we must find and give

effect to the legislative intent by considering, not a part, but all of the language used, and are justified in rejecting any part of the statute as unnecessary and irrelevant only in the last resort when it has been found impossible to give effect to all the language used, and reach a rational conclusion. It is impossible to read the three sections under consideration without at once concluding that the regulation of the rights of telegraph companies in their relation to railroad companies in the matter of the construction, maintenance, and operation of their lines was one of the essential objects of the original statute, and the sections into which it has been divided as they now appear in the Code. " Parallel," as used in sec. 1287, does not have its primary and scientific meaning " as lines extended in the same direction and in all parts equally distant." That definition can in no case be applied to a line of railway, for no railway line is, we believe, mathematically straight. The Legislature merely intended to say that the telegraph line should be " along and parallel to," in the sense of "conforming to," "having the same direction of, tendency with " the railroad, in order to guard against any undue interference with or hinderance of the railroad company in the enjoyment of its property. If there were any doubt left as to the proper construction of sec. 1287, the two succeeding sections should remove it. Sec. 1288 provides that a telegraph company " may contract with any person or corporation, the owner of lands, or of any interest, franchise, or easement therein or in respect thereto, over which such line is proposed to be constructed, for the right of way of erecting * * * its line; and sec. 1289 provides that if a telegraph company and " such owner " cannot agree, the company shall be entitled to such right of way upon making just compensation therefor to " such owner."

Referring to sec. 1288, we find that the " owner " referred to is " any person or corporation," and the right of way referred to is one to be constructed " over " their lands.   There

seems to be hardly room to doubt that these two sections, one of which provides for the acquisition of the right conferred by sec. 1287 by contract, and the other by condemnation, contemplate that the right is to be " over " the property of the " land owner," whether he be a person or corporation, provided only, in the case of county roads, public works and waters of the State, and of railroads, that their ordinary use shall not be thereby obstructed.

As bearing upon the proposition that the three sections discussed are to be considered and construed together, we refer, in addition to the considerations already mentioned, to sec. 1290, which expressly groups the three sections together, and provides that they " shall be subject to repeal, alteration, or modification, and the rights and privileges acquired thereunder shall be subject to revocation or modification by the General Assembly at its pleasure."

The plaintiff in error urges upon us the propriety of considering the measure of damages. It would be premature to do so at the present time. We shall content ourselves, therefore, with reversing the judgment of the County Court, and direct it to enter judgment in conformity with the views herein expressed.

*Reversed.*