Wytheville.

## NEW MARKET AND SPERRYVILLE TURNPIKE COMPANY v. KEYSER AND OTHERS.

June 8, 1916.

Absent, Keith, P.

1. STATUTES—*Repeals by Implication.*—The repeal of a statute by implication is not favored, and the presumption is always against the intention to repeal where express terms are not used, or the later statute does not amend the former. In order for one statute to repeal another simply on account of their repugnancy, there must be a plain, unavoidable, irreconcilable repugnancy, and even then the former law is repealed by implication only to the extent of the repugnancy. If both acts can, by any reasonable construction, be construed together, both will be sustained.

2. TURNPIKE COMPANIES—*Forfeiture of Charter—Acts of 1906 and 1914—Repeal of Statute.*—The act of March 21, 1914 (Acts 1914, p. 267), relating to turnpike companies, does not expressly or by implication repeal the act of March 17, 1906 (Acts 1906, p. 523), on the same subject. The act of 1914 imposes no liability and indicated no mode of procedure for the abandonment of a turnpike road and the forfeiture of the charter and franchise of a turnpike company. These important and vital features, and the rights of the parties thereunder, are controlled by the act of 1906 which does not conflict with any provision of the act of 1914.

3. TURNPIKE COMPANIES—*Forfeiture of Charter—Substantial Work on Road—Evidence.*—Under the act of 1906 referred to in the preceding paragraph, the turnpike company had the right to show that, within four months from the filing of the first report of the viewers showing that its road was out of order, it had done substantial work on the road and that such work was continued until the weather rendered further repairs impossible, and that this condition of the weather continued up to the trial.

4. CONSTITUTIONAL LAW—*Viewers of Turnpikes—Freeholders.*—Viewers of turnpike roads are not officers of either the State or of a county, city or town, or other subdivision of the State, but mere appointees of the court to perform a specific service in a prescribed manner, and a statute requiring that such viewers shall be freeholders is not in con-

flict with section 32 of the Constitution which makes every qualified voter eligible to any office of the State, or of any county, city or town, or other subdivision of the State.

Error to a judgment of the Circuit Court of Page county on a petition filed in said court. Judgment for the petitioners. Defendants assign error.

*Reversed.*

The opinion states the case.

*Walton & Brother,* for the plaintiff in error.

*R. S. Parks, W. F. Keyser* and *R. F. Berry,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The New Market and Sperryville Turnpike Company, pursuant to a charter granted it in the year 1843, constructed a turnpike from the town of New Market, in Shenandoah county, across the Massanutten mountain, through Page county, to the top of Blue Ridge, and thence to the town of Sperryville, in Rappahannock county, a distance of about 30 miles. Of this turnpike about five miles—from New Market to the top of the Massanutten mountain—lies in the county of Shenandoah; about twenty miles—from the top of the Massanutten mountain to the top of the Blue Ridge—lies in the county of Page; and about five miles—from the top of the Blue Ridge to the town of Sperryville—lies in the county of Rappahannock.

Some years ago the section of five miles lying in the county of Shenandoah and the section of five miles lying in the county of Rappahannock, were either abandoned or forfeited and turned over to the public

road authorities of said counties, respectively. Subsequently, but several years ago, a section of five miles lying in Page county, from a point about four miles west of the town of Luray running east to and through said town to its eastern suburbs, was abandoned by the turnpike company and turned over to the road authorities of Page county; so that of the original turnpike connecting the towns of New Market and Sperryville, and comprising six sections of five miles each, there are now, and have been for several years, only three sections that are claimed by the turnpike company, one of which extends from the top of the Massanutten mountain in an easterly direction to within a distance of four miles of the town of Luray, and the other two sections extend from the eastern suburbs of the town of Luray eastwardly to the top of the Blue Ridge.

Under the statute—sub-section 5 of section 1294-j of the Code of 1904—the duty devolved upon the Circuit Court of Page county to appoint, in the months of April, August and December of each year, three disinterested freeholders to make an examination of the turnpike and to report its condition to the court, according to law in all such cases made and provided, with recommendations, and this it seems had been done through a number of years prior to the year 1914 with reference to the two sections of said turnpike east of Luray and the one section west of Luray. In vacation, August, 1914, L. M. Frank, John P. Louderbeck and D. T. Hite, freeholders, were appointed by the judge of the circuit court to view the said New Market and Sperryville turnpike, and who, after viewing the same, filed their report with the clerk of the county on the 6th day of August, 1914, wherein they reported that the turnpike was not in good con-

dition; whereupon tolls thereon became, pursuant to statute in such case made and provided, automatically suspended.

On a hearing of the appeal taken by the turnpike company from the decision of said viewers, as authorized by statute, the circuit court, on the 18th day of August, 1914, confirmed the report of the viewers and continued the suspension of tolls on the turnpike. Again, on October 31, 1914, the court appointed L. M. Frank, D. S. Hite and John E. Koontz, freeholders, to view the turnpike and report its condition, etc., and the same was by these viewers reported to be not in good condition, which report was filed in the clerk's office on the 31st of October, 1914, and the suspension of tolls on the turnpike continued. This, it appears, remained the status of affairs until January 30, 1915, when notice was served on the president of the turnpike company that a petition would be filed by W. F. Keyser, Commonwealth's attorney for the county of Page, and others, on the 15th day of February, 1915, which was the first day of the February term, 1915, of the Circuit Court of Page county, praying an order of the court decreeing the abandonment of the turnpike and placing the same under the control of the board of supervisors of Page county, to be kept in good order in the same manner as other public roads in the county. Accordingly, such a petition was filed at the time named in said notice and the turnpike company then and there appeared and moved the court to strike out said petition as not authorized by law, which motion being overruled by the court, the turnpike company filed its demurrer to the petition setting forth the grounds thereof in writing, in which demurrer the petitioners joined, and the court having overruled the demurrer and every ground thereof, the turnpike

company filed its answer traversing the allegations of the petition, and offered evidence to prove that its annual report, the franchise tax and registration fee for the year 1915, were filed before the State Corporation Commission January 30, 1915; and also offered to introduce proof to show that substantial work was done on said turnpike in the early part of November, 1914, within four months from the time that the first report of viewers was filed, and that said repair work was being continued until the weather became so inclement that further repairs were impossible on account of the snow and rain and that this condition continued to that time, to-wit, the hearing of the cause; but the court excluded all of this evidence, to which rulings of the court the turnpike company duly excepted. Whereupon, the court, on the 19th day of February, 1915, entered its order declaring the turnpike company had abandoned its said road and adjudging that the same be turned over to the board of supervisors of the county of Page to be worked as other public roads, the effect of which was to declare a forfeiture of the charter and franchise of the turnpike company, to which judgment this writ of error was awarded the turnpike company.

The first question requiring consideration by this court is whether or not the act of the General Assembly approved March 21, 1914 (Acts 1914, p. 267), amending and re-enacting section 9 of ch. 10 of the act approved January 18, 1904, (Acts 1902-3-4, p. 1008), amended or repealed by implication the act of the General Assembly relating to turnpike companies, approved March 17, 1906, (Acts 1906, p. 267), and which itself amends and re-enacts sections 7 and 9 of ch. 10 of the act of 1902-3-4, *supra.*

The later act (1914) does not pretend to amend the former (1906), but as its title indicates amends only sections 7 and 9 of ch. 10 of that act. If, therefore, the act of 1906 has by implication been repealed by the act of 1914, the question remains whether or not it has been repealed wholly or only in part.

It is well settled that the repeal of a statute by implication is not favored, and the presumption is always against the intention to repeal where express terms are not used, or the latter statute does not amend the former.

In the recent case of *Lambert* v. *Barrett*, 115 Va. 136, 78 S. E. 586, Ann. Cas. 1914 D, 1226, the opinion by Buchanan, J., says: "The repeal of a statute by implication is not favored by the courts. The presumption is always against the intention to repeal where express terms are not used. To justify the presumption of an intention to repeal one statute by another, the two statutes must be irreconcilable. If by fair and reasonable construction they can be reconciled, both must stand."

As we view the two statutes here in question, they are easily to be reconciled, and both should stand in so far as the act of 1906 is not amended by the act of 1914. The first paragraph of section 9 of the original act of 1904, as it appears in the act of 1906, provided that all tolls upon any section or sections of the road of any turnpike company pronounced to be out of repair by the viewers, or over which they recommend that the tolls be suspended, shall from the time of the filing of the report of the viewers in the clerk's office, be suspended unless an appeal be taken from the decision of the viewers, as provided in section five of the act of 1904; and in the event that the circuit court shall confirm the report of the viewers, upon appeal,

or in the event that no appeal be taken, the tolls thus suspended shall remain suspended until said section or sections shall be put in good repair and ascertained to be so, etc.; while the first paragraph of section 9 of the act of 1904 is, in the act of 1914, made to read: "All tolls upon any section or sections of the road of any turnpike company so pronounced not to be in good repair, shall be suspended from the time of filing of a report of the said viewers in the clerk's office, and until the said section or sections shall have been put in good repair and ascertained so to be in the following manner, within four months from the date of the filing of the report of said viewers."

The act of 1906, amending section 9 of the original act (1904), provides, as did the original act, that on the application of the president, or one of the directors of the company, a justice shall issue his warrant for summoning three freeholders of the county to be named in the warrant, to meet on the section or sections at a specified time and ascertain whether the said section or sections are in good repair or not, the proceedings upon such warrant to be the same as are prescribed in the preceding sections of the act (1904); provided that where viewers appointed by the circuit court of any county in which there may be a turnpike road upon which tolls are charged, or by the judge thereof in vacation, shall have reported such turnpike, or any section or sections thereof, as not in good repair, and payment of tolls on the same shall have been suspended in the manner provided by law, should such turnpike company allow its said road, or any section or sections thereof, to remain for four months consecutively in such condition that tolls are not allowed to be charged thereon, the Commonwealth's attorney of such county, or any adjacent county, may

apply by petition in writing to the circuit court of such county in which such turnpike road is situated to have the said turnpike, or any section or sections thereof in said county upon which tolls are not allowed to be charged, again viewed by freeholders, of which petition five days' notice to the president or, etc.; and the said circuit court shall cause the turnpike, or any section or sections thereof in said county upon which tolls are not allowed to be charged, to be examined by three freeholders of the county, all proceedings following this petition to be as provided by sections five, six, seven and eight of chapter 10 of the act of 1904; provided that the report of the freeholders shall, in addition to the report required by section seven of said chapter, state whether in the'r opinion the said turnpike company has prior to service of such notice made substantial effort to put in good repair such section or sections of the road since the same was or were declared to be not in good repair and tolls thereon suspended. The act of 1906 further provides that, "upon the filing of the report of said viewers, the court may set a day for the consideration of the said report, of which due notice in writing shall be served upon the president, or any director or agent or employee of the said turnpike company, and upon said hearing, the court may confirm, set aside, or recommit said report for further proceeding, or may enter such order in the premises as it may deem advisable; but if upon the hearing herein provided for, or any subsequent hearing, the said court shall be of opinion that the said road, or any section or sections thereof, is or are not in good repair, and that the said turnpike company has not made real and substantial effort to put the said road and the sections thereof in good repair, after tolls were suspended thereon, according

to this section, then the said court may enter its order declaring that the said turnpike company has abandoned its said road in said county, and thereupon the charter and franchises of the said turnpike company as to said road in said county shall be forfeited.

By a comparison of the act of 1906 with that of 1914 it is readily to be seen that the chief difference consists in the elimination of the provision which permitted the president or one of the directors of the company to apply to a justice for a warrant summon'ng three freeholders, etc., and the substitution in the later act of the provision that the application for the warrant may be made by the president or a director of the turnpike company to the court. There seems to have been no effort or purpose to make any change in the remainder of the act of 1906, except in so far as the act of 1914 says, "and until said section or sections shall have been put in good repair and ascertained to be so, etc., within four months from the date of filing the report of the viewers;" whereas, the language of the act of 1906 is, that "if any section or sections thereof remains for four months consecutively in such condition that tolls are not allowed to be charged thereon the Commonwealth's attorney may apply by petition again to have these sections viewed," etc. Then follows the provisions for the filing of the report of the viewers, which report was to deal with and report upon the matters and things as provided for in the preceding sections of the act of 1904, and in addition the viewers were in their report to state whether in their opinion the turnpike company had made substantial effort to put in good repair such section or sections of its road as had been declared to be not in good repair and tolls thereon suspended, whereupon the court was to hear and determine

the case. The act of 1914 makes no provision for a hearing of the turnpike company after tolls on its road have been suspended and before its charter and franchise could be declared forfeited, and none was had in this case, the court, as its order of February 19, 1915, complained of shows, taking the view that the act of 1914 repealed, by implication, the act of 1906, *in toto*, and that as more than four months had elapsed since the road was reported to be not in good repair and the tolls thereon suspended in the meantime, these facts of themselves operated as an abandonment of the road by the turnpike company and authorized the court to adjudge and order that the same be turned over to the board of supervisors of the county of Page to be worked as other public roads.

Neither the act of 1914, nor the act of 1904 which it purported to amend, provides that if the road is not in good repair within four months from the filing of the report of the viewers pronouncing the road not to be in good repair the same shall be declared abandoned by the court and the charter and franchise forfeited, but the ninth section of the former act provided for another set of viewers charged with the duty of ascertaining and reporting whether the road or a section or sections thereof declared to be out of repair was then in good repair or not; while the amendment of section 9 of the act by the act of 1906 goes further and requires that these viewers state in their report whether in their opinion the turnpike company has, within a time specified, made substantial effort to put in good repair such section or sections of its road since the same was or were declared as not being in good repair and tolls thereon suspended. It is upon such a report that the court is required to give, after notice to the turnpike company, a hearing of the cause, and is authorized,

upon the ascertainment of certain facts, namely, that the road, or any section or sections thereof, is or are not in good repair, and that the turnpike company has not "made real and substantial effort to put its road and the sections thereof in good repair, after tolls were suspended thereon, to declare, by its order, that the turnpike company has abandoned its road and forfeited its charter and franchises. These important and vital features of the act of 1906 do not conflict with any provision of the act of 1914 which imposes no penalty and indicates no mode of procedure for the abandonment of the turnpike road and forfeiture of the charter and franchises of a turnpike company.

In 36 Cyc. p. 1077, it is said: "When two statutes cover in whole or in part the same subject matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the court, if possible, will give effect to both. Where, however, a later act covers the whole subject of the earlier acts and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former are not in all respects repugnant to the new act. But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a susbtitute for it. If the later statute does not cover the entire field of the first, and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands." In other words, as the same author-

ity, at p. 1074, says: "Between the two acts there must be plain, unavoidable, irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto*, to the extent of the repugnancy. If both acts can, by any reasonable construction, be construed together, both will be sustained. Two statutes are not repugnant to each other unless they relate to the same subject. Furthermore, it is necessary to the implication of a repeal that the objects of the two statutes be the same. If they are not, both statutes will stand, although they refer to the same subject." Citing a number of decided cases, including *Somers* v. *Com'th*, 97 Va. 759, 33 S. E. 381.

It would be an unwarranted construction, as it appears to us, of the act of 1914 under consideration here, that would permit the court, merely upon the fact that four months had elapsed from the filing of a report of viewers of the turnpike, pronouncing it not to be in good repair, to declare it abandoned and the charter and franchises of the turnpike company forfeited, and that too without giving to the turnpike company a hearing and an opportunity to show cause, if any it had, why such a judgment should not be pronounced against it.

The proceedings upon the petition of defendants in error in this case having ignored the unrepealed provisions of the act of 1906, which provide for a hearing of the turnpike company before its road or any part of it could be declared abandoned and the charter and franchise of the company forfeited, the turnpike company, plaintiff in error here, as the order of the court complained of states, "offered evidence to show that substantial work was done on said turnpike in the early part of November, 1914, (that is, within four months from the date of the filing of the first report of the

viewers), and was continued until the weather became so inclement that further repairs were impossible on account of the snow and rain, and that this condition continued to the present time (February 19, 1915, date of court's order), but the court excluded such evidence and declined to hear the same." This ruling is plainly erroneous. This evidence, for the reasons already stated, was clearly admissible and was properly to be considered by the court before its adjudication that the turnpike company had abandoned its road in Page county and forfeited its charter and franchise.

There is no merit in the plaintiff in error's third assignment, which presents the questions, (1) whether the act of 1914 is unconstitutional, in that its title does not express the object of the act, if it is claimed that under the act a turnpike company can forfeit, without due process of law or hearing, its franchises and charter and be declared abandoned; and (2) whether the act is unconstitutional and void because it requires that the viewers must be freeholders.

The object of the statute, as its title expresses, is to amend and re-enact two sections of a previous act relating to turnpike companies, and the act itself conforms to the purpose expressed in its title, and cannot, for the reasons above stated, be fairly or reasonably construed as authorizing the forfeiture without due process of law of the franchises and charter of a turnpike company and an adjudication that its road, or some part or parts of it, has been abandoned.

We do not think that the provision in the statute requiring that the viewers of a turnpike road, appointed by the court, shall be freeholders violates section 32 of Art. 2 of the Constitution, which provides that "every person qualified to vote shall be eligible to any office

of the State, or any county, city, town, or other sub-division of the State. . . " Nor do we think, as plaintiff in error contends, that the question here is controlled, by analogy at least, by the case of *Gwath-mey* v. *Lyons, Treas.*, 116 Va. 872, 84 S. E. 103, which approves the decision in *Black* v. *Trower*, 79 Va. 123. In the later case the constitutionality of a statute requiring commissioners of roads and bridges of Norfolk county to be freeholders was involved, and the court held that these commissioners were *officers* of the county of Norfolk, following the reasoning and ruling in the former case of *Black* v. *Trower*, that members of electoral boards are officers of the State. These cases, as it seems to us, can have no application to the instant case. Viewers of a turnpike road, appointed pursuant to the act of 1914, like commissioners appointed by the court to assess the value of condemned land, or to assign dower, or to sell real estate, etc., are not officers of the State, nor officers of a county, city or town, or other sub-division of the State, but mere appointees of the *court* to perform a specified service in a prescribed manner and make report to the court for its information and guidance. Viewers appointed pursuant to said statute are, as said with respect to commissioners in eminent domain proceedings, by Whittle, J., speaking for the court in *Richmond, &c. Co.* v. *Seaboard, &c. Co.*, 103 Va. 304, 49 S. E. 512, "disinterested parties, they act under the solemnity of an oath, and are selected by the court from a conservative class of citizens, freeholders, on account of their peculiar fitness for the service to be rendered."

Other points raised in the petition for this writ of error are either considered as wholly without merit or as not likely to arise upon another trial of the case.

Because of the errors pointed out, the judgment of the circuit court, complained of, must be reversed and the cause remanded to that court for such further proceedings in the case as may be deemed necessary or expedient and not in conflict with the views expressed in this opinion.

*Reversed.*

N. B.—Costs to be recovered by plaintiff in error of defendants in error other than W. F. Keyser, Commonwealth's attorney for Page county.