# Richmond

P. PRYOR LIPSCOMB AND OTHERS v. O. N. NUCKOLS AND
OTHERS.

February 26, 1934.

Present, All the Justices.

The opinion states the case.

*Lewis C. Williams, J. Randolph Tucker, John P. Leary, W. J. Parrish, Jr.,* and *Ralph T. Catterall,* for the appellants.

*Leon M. Bazile, Robert E. Scott* and *Hunsdon Cary,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

Pursuant to the provisions of chapter 368 of the Acts of 1932, the county manager form of government was adopted at an election held in Henrico county on September 19, 1933. On November 7, pursuant to provisions of the same chapter, the voters of Henrico county elected four new members of the "county board of supervisors," who, under the act, were required on January 1st, thereafter, to assume the duties and responsibilities of the county manager form of government. The old board of supervisors, chosen by the electors in the different magisterial districts for a four years' term beginning January 1, 1932, declined to vacate their offices, and claimed the right to elect a county manager and put into effect the enlarged powers granted under the newly adopted form of government.

Thereupon, the members of the new board filed a bill in chancery praying that the old board be enjoined from electing a county manager and from putting into effect any of the enlarged powers granted under the act of 1932.

Respondents' demurrer to the bill raised two legal questions: (1) The power of the legislature to shorten the term or vacate the office of a county or district officer; (2) the time the adopted form of government became effective. The trial court held that the legislature had no power to shorten or vacate the office of the members of the old board of supervisors, and that the change in the form of government became effective on the date the majority of those voting expressed their preference for the new form of county government. From a decree so declaring, this appeal was awarded.

It is conceded (a) that the question of change in the form of county organization and government was duly submitted to the qualified voters of Henrico county and that the majority of those voting were in favor of the proposed change; (b) that the election of new members of the *county* board was held in strict conformity to the pro-

visions of chapter 368 of the Acts of 1932; and (c) that the new members, appellants here, were and are duly qualified to hold the offices to which they have been elected.

The contention of the appellees is that the provisions of chapter 368 of the Acts of 1932 which attempt to remove them from office before the expiration of their term are in conflict with section 112 of the Constitution, and are, therefore, void.

The generally accepted rule, and the one established in Virginia, is well stated in *Foster* v. *Jones,* 79 Va. 642, 644, 645, 52 Am. Rep. 637:

"* * * We think it may fairly be assumed in the outset to be an undeniable proposition, that the two branches of the legislature, as the direct representatives of the people, have the right, when no restrictions have been imposed upon them, either in express terms or by necessary implication by the Constitution, to create and abolish offices accordingly as they may regard them as necessary or superfluous. And that they may also, under like circumstances, deprive the officers of their salaries, either directly, by removing them from office, or indirectly, by so changing the organization of the departments to which they are attached as to leave them without a place. But, of course, this power in the legislature cannot be construed to extend to any of the various classes of officers which are known as constitutional officers; that is, to any of those officers whose tenure and term of office are fixed and defined by the Constitution. *State* v. *Messmore,* 14 Wis. 167; *Com.* v. *Gamble,* 62 Penn. St. 343, 352 [1 Am. Rep. 422]." See, also, *Cases of the Judges of Court of Appeals,* 4 Call 135; *Pendleton* v. *Miller,* 82 Va. 390; *Sinclair* v. *Young,* 100 Va. 284, 40 S. E. 907; *Fugate* v. *Weston,* 156 Va. 107, 157 S. E. 736.

Restating in another form the question to be determined, is the tenure and term of office of a district supervisor so fixed by the Constitution as to deny to the legislature the power to abolish that office and thus deprive the officer of the emoluments of office before his term expires?

The provisions for organization and government of counties found in article VII of the Constitution, as originally adopted, were fixed and rigid, with little or no power in the General Assembly to make any change to meet changing conditions. Public dissatisfaction with the old form and a demand for a remedy culminated in the amendments to the different sections of this article, adopted June 19, 1928, whereby the General Assembly was authorized and empowered to make a complete change in the form of county organization and government. A comparison of the old and the amended provisions of section 110 reveals these enlarged powers.

| OLD | AMENDED |
|---|---|
| "There shall be elected by the qualified voters of each county, one county treasurer, who shall not be elected or serve for more than two consecutive terms, nor act as deputy of his immediate successor; one sheriff, one attorney for the Commonwealth, and one county clerk, who shall be the clerk of the circuit court. There shall be elected or appointed, for four years, as the General Assembly may provide, commissioners of the revenue for each county, the number, duties and compensation of whom shall be prescribed by law; but should such commissioners of the revenue be chosen by election by the people, then | "There shall be elected by the qualified voters of each county a treasurer, a sheriff, an attorney for the Commonwealth, and a county clerk, who shall be the clerk of the circuit court; and there shall also be elected by the qualified voters of each county one commissioner of the revenue.<br><br>"The duties and compensation of such officers shall be prescribed by general law.<br><br>"There shall be appointed for each county, in such manner as may be provided by law, one county surveyor.<br><br>"The General Assembly may provide for the election or appointment of a |

they shall be ineligible for re-election to the office for the next succeeding term.

"There shall be appointed for each county, in such manner as may be provided by law, one superintendent of the poor, anl one county surveyor."

superintendent of the poor, other ministerial and executive officers for each county, and for the election or appointment of such officers for two or more counties conjointly. The provisions for such conjointly elected or appointed officers shall apply only to such counties as may adopt the same by a majority vote of the qualified voters of each of such counties voting in any election held for such purpose.

"The General Assembly may provide for the consolidation by two or more counties, or by one or more counties with one or more cities, of their charitable and penal institutions. But such consolidation shall apply only to such counties and cities as may authorize the same, in such manner as has heretofore been, or may hereafter be, prescribed by law.

"*Notwithstanding the provisions of this article, the General Assembly may, by general law, provide for complete forms of county organization and government different from that provided for in this article,*

*to become effective in any county when submitted to the qualified voters thereof in an election held for such purpose and approved by a majority of those voting thereon."* (Italics supplied.)

▉ Article VII consists of seven sections, 110-115a, inclusive, each dealing with the organization and government of counties. The last paragraph in section 110, "Notwithstanding the provisions of this article, the General Assembly may * * * provide for complete forms of county organization and government different from that provided for in this article," makes the provisions of each and every section in article VII subject to this provision. It would be difficult to use words which more clearly express such intention. This is virtually conceded by appellees, but they contend that, because this qualification is repeated in sections 111 and 113 and omitted in section 112, it was not intended by the framers of the amendments, or by the people in adopting them, to authorize the legislature to abolish any district or county office during the term of any officer named therein.

The very strong and able arguments presented both orally and in the briefs for appellees, as well as the able opinion of the trial court filed in the record, raised some doubt in our mind of the proper construction of these sections. However, to doubt is not enough. The principles of construction are admirably summarized by Mr. Justice Holt in *Quesinberry* v. *Hull,* 159 Va. 270, 274, 165 S. E. 382, 383:

▉ "The legislature functions under no grant of power. It can do those things which are not forbidden by the State or Federal Constitutions, or which are not repugnant to those elementary social rights upon which society, as we know it, rests. *Farmville* v. *Walker,* 101 Va. 323, 330, 43 S. E. 558, 561, 61 L. R. A. 125, 99 Am. St. Rep. 870. All laws are presumed to be constitutional and must,

wherever there is doubt, be sustained, but there must be some room for honest doubt, arising out of the law itself as written. There must be some substance in the doubt; a shadow is not enough.

■ "Constitutions are not esoteric documents and recondite learning ought to be unnecessary when we come to interpret provisions apparently plain. They speak for the people in convention assembled, and must be obeyed.

■ " 'It is a general rule that the words of a Constitution are to be understood in the sense in which they are popularly employed, unless the context or the very nature of the subject indicates otherwise.' Black on Interpretation of Laws, page 25.

" 'In the first place, then, every word employed in the Constitution is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss.' 1 Story Const., section 451."

■■ Giving to the language used in the last paragraph of section 110 its plain, natural, and usual significance and import, it modifies or qualifies the provisions of section 112. Simply because this qualification is repeated in sections 111 and 113 and is not repeated in section 112 is not sufficient to exclude its application from the provisions of the latter section. To so construe section 112 would necessitate the court's adding words of exception which are not found in section 110. It is the duty of the court

in construing the Constitution to give effect to an express provision, rather than to an implication.

This construction is in harmony with the construction this court has already placed upon the sections of the Constitution authorizing a change in the form of organization and government for the cities. By the 1912 amendments to the sections in article VIII of the Constitution (see Acts 1912, ch. 332), the legislature was authorized to provide a method of making change in the form of organization and government of the cities and towns in the Commonwealth, in the following language: "Notwithstanding, however, anything in this article contained, the General Assembly may, * * * depart in any respect * * * from the form of organization and government prescribed by this article." Pursuant to this authority, the General Assembly, by chapter 94 of the Acts of 1914, amended by chapter 226 of the Acts of 1918, provided new forms of government for cities which might be adopted by the voters therein. In the act of 1918 is found this provision:

"And the terms of all the members of the old council of such cities, whether they be hold-over members or not, as well as of the mayor (if his term has not then expired) shall cease and be determined on said first day of September following such election. And the term of office of all officers and employees theretofore appointed or elected by the old council shall in like manner cease and determine on said first day of September." (Section 3.)

In accordance with these provisions, several cities, in the manner provided, changed their form of organization and government, among them Charlottesville, Lynchburg and Roanoke. In one, or more, of these cities the offices of mayor and councilmen were abolished before their term of office expired. The constitutionality of the act was attacked, and upheld, in the following cases: *City of Roanoke* v. *Elliott,* 123 Va. 393, 96 S. E. 819; *Harrison* v. *Barksdale,* 127 Va. 180, 102 S. E. 789; *Albemarle Oil & Gas Co.* v. *Morris,* 138 Va. 1, 121 S. E. 60.

The specific point here under consideration does not seem to have been discussed in any of the cases cited.

Notwithstanding this fact, the decisions have been accepted as authority for the proposition that the General Assembly has the power to provide a method for change in the form of organization and government for the cities, even though an incidental result of such change is to curtail the term of city officers, which, under the old form of government, was fixed by the Constitution. The language used in the 1912 amendment to section 117 and the present language used in section 110 authorizing the legislature to provide for a change in the form of organization and government for the two classes of political subdivisions of the State is very similar. Hence it is reasonable to infer that the commission which drafted the 1928 amendments and the people who voted for them intended the legislature to have the same power in providing a change in the form of organization and government for the counties as it had for the change in form of organization and government for the cities.

This distinguished commission in its report to the General Assembly said:

"The animating purpose of the commission has been to relax many of the existing restrictions on the powers of the General Assembly, so as to secure to the Commonwealth and to its political subdivisions more elastic forms of government, capable of being adjusted from time to time to new conditions, and, enlightened by experience, to existing conditions. The General Assembly, the House being elected every two years, is closest to the people, and its powers to adapt government in its details to the needs of the people should not be unduly restricted, under a system of government which derives all of its powers from the people."

This is also the construction placed upon the provisions by two former chief executives of this State and by the legislature when it adopted the chapter in question. While the construction of a constitutional provision or an act of the General Assembly by the executive or legislative branch of the government, or both, is not controlling upon

the court. such construction is entitled to consideration. As was said by Mr. Justice Gregory in *Board of Supervisors* v. *Cox*, 155 Va. 687, 706, 156 S. E. 755, if such construction is contemporaneous it is entitled to great weight.

By the adoption of chapter 368 of the Acts of 1932, the General Assembly has provided the method of abolishing the existing organization and government for the counties and substituting a new organization and government in place of the old.

The electors in the county of Henrico have acted under this authority. The result is that the old legislative body called the "board of supervisors" has been abolished and a new legislative body called the "county board of supervisors" has been created. The method of electing this new body is different from the method of electing the old body. The powers and duties of the new board are different from those exercised by the old board. The new county government is a different corporate entity from the old. Henrico county has adopted a complete form of county organization and government different from that provided in article VII, which is within the intent of the provisions of the last paragraph of section 110.

The power to provide for a complete change in the form of county organization and government includes the power to abolish the old form and all offices thereunder. The incidental effect may be to oust or deprive the old officers of their offices before the expiration of their terms. When these officers accepted their respective offices they did so with the knowledge that the Constitution had authorized the legislature to provide a method by which the electors of the county might change their form of government and abolish the office to which they had been elected. Both the legislature and the electors of Henrico county have acted under this constitutional authority and have deprived the appellees here of office.

The other question is, when does the new form of organization and government take effect? This is de-

termined by the proper construction of the following language found in section 110: "* * * to become effective in any county *when* submitted to the qualified voters thereof in an election held for such purpose and approved by a majority of those voting thereon." (Italics supplied.)

The trial court construed the word "when" to mean that instantaneously with the election the new form of government should become effective and that it was the duty of the old board to assume all the enlarged powers granted by the act of 1932. But this act grants to the old board no power at all. On the contrary, it provides for a new legislative body for the county, elected, not by districts, but by the county as a whole. The legislature has given authority to the newly elected "county board of supervisors" to install the new form of government. It can be installed only by this legislative body, elected in the manner prescribed by law. For the court to confer the enlarged powers upon the old board of supervisors would be the exercise of a legislative function, which is denied to courts. If the word "when" is used in a temporal sense, then it would seem to follow that the change in the form of organization and government contemplated by the Constitution must become effective on the date of its approval by the voters in any county, and that, since the provisions of chapter 368 are not so drawn as to become effective on that date, then the whole act is void. This is a strained construction of the language used.

The constitutional provision is not self-executing. It permits any county to change the form of county organization and government, upon two conditions: (1) The General Assembly, by general laws, must provide the form; (2) the proposed form must be submitted to the qualified voters in the county and approved by a majority of those voting.

From the context, "when" describes the occurrence which must take place; *i. e.*, the submission to and approval by the qualified voters before the act becomes operative in any county. Chief Justice John Marshall, in

*U. S.* v. *Willings,* 4 Cranch (8 U. S.) 48, 55, 2 L. Ed. 546, said:

"In construing the 14th section, much depends on the true legislative meaning of the word 'when.' The plaintiffs in error contend that it designates the precise time when a particular act must be performed in order to save a forfeiture; the defendants insist that it describes the occurrence which shall render that particular act necessary. That the term may be used, and, either in law or in common parlance, is frequently used, in the one or the other of these senses, cannot be controverted; and, of course, the context must decide in which sense it is used in the law under consideration."

In *Pulliam* v. *Aler,* 15 Gratt. (56 Va.) 54, 59, this is said: "The word *when* does not necessarily refer to the instant of time spoken of; it frequently is used in a relative, instead of an absolute sense, referring not to the present, but to a different time; and means, according to the context, 'whenever,' 'upon which,' 'in case,' 'if,' etc."

There are numerous other cases so holding, both within and without this jurisdiction: *Sellers' Ex'r* v. *Reed,* 88 Va. 377, 13 S. E. 754; *Goodwyn* v. *Myers,* 16 Gratt. (57 Va.) 336; *Major's Ex'r* v. *Major's Adm'r,* 32 Gratt. (73 Va.) 819; *A. C. L. R. Co.* v. *Jones,* 132 Ga. 189, 63 S. E. 834; *State* v. *Huston,* 21 Okla. 782, 97 Pac. 982; *T. & P. Ry. Co.* v. *Beaird* (Tex. Civ. App.) 169 S. W. 1050; Words and Phrases, vol. 8, p. 7437.

We conclude, and therefore hold, that the word "when," as used in the last paragraph of section 110, does not mean "at the time that" or "as soon as." In other words, it does not refer to the time when the new form of government is approved, but to the fact of approval as a condition precedent to its becoming effective in any county.

For the reasons stated, the decree of which complaint is made is reversed, and an order will be here entered in accordance with the prayer of complainants' bill.

*Reversed.*