## Richmond

### BOARD OF SUPERVISORS OF ALBEMARLE COUNTY
### v. SHELBY J. MARSHALL.

April 28, 1975.

Record Nos. 740513, 740514.

Present, All the Justices.

*Frederick W. Payne, Deputy County Attorney for Albemarle County,* for plaintiff in error in Record Nos. 740513 and 740514.

*Edward H. Bain, Jr. (Boyle & Wood,* on brief), for defendant in error in Record Nos. 740513 and 740514.

*Charles K. Trible, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief *amicus curiae)* in Record Nos. 740513 and 740514.

*Mosby G. Perrow, III (John R. Alford; Caskie, Frost, Hobbs & Hamblen,* on brief *amicus curiae)* in Record No. 740513.

Cochran, J., delivered the opinion of the court.

Shelby J. Marshall, Clerk of the Circuit Court of Albemarle County, filed her motion for judgment in the trial court against the Board of Supervisors of Albemarle County (Board), alleging that the Board had, during her term of office, underpaid her in the amount of $39,264.36 (Record No. 740513). She also filed a motion for declaratory judgment against the Board seeking an adjudication that the compensation of her deputy clerks is controlled by the State Compensation Board and not by the Board of Supervisors (Record No. 740514). Answers were filed by the Board of Supervisors.

After a hearing on March 1, 1974, at which evidence was introduced and argument of counsel was heard, the trial court ruled against the Board in both cases. On March 15, 1974, judgment was entered in the declaratory judgment proceeding, declaring that the State Compensation Board determines the compensation and the effective dates during which such compensation is payable to Marshall's deputies and awarding judgment for any salary deficiencies of the deputies for the calendar year 1973. On April 24, 1974, judgment was entered for Marshall against the Board in the amount of $39,264.36 for additional salary payable to her. The Board has appealed both judgment orders.

## I

## Salary of the Clerk.

Albemarle County adopted the county executive form of government in 1933 pursuant to enabling legislation, Title 15.1, Chapter 13, Article 2, §§ 15.1-582 *et seq.*, Code of 1950, as amended, and predecessor statutes. Under this optional form of government the General Assembly vested in the Board the power to fix the compensation of all officers of the county and to establish a uniform schedule of compensation for county officers and employees, subject to limitations made by general law.[1]

Marshall was elected clerk for an eight year term beginning January 1, 1968. During her term the Board has paid her a salary which at all times has been less than what she would have earned had she been compensated under the fee system. There is no evidence that Marshall accepted only under protest the salary, including annual increases, fixed for her by the Board.

---

[1] Code § 15.1-600 provides:

"The board of county supervisors shall, subject to such limitations as may be made by general law, fix the compensation of all officers and employees of the county, except as it may authorize the head of some department or office to fix the compensation of subordinates and employees in such department or office."

Code § 15.1-610 provides:

"The department of records shall be under the supervision and control of the county clerk. He shall be clerk of the circuit court of the county and clerk of the board of county supervisors unless the board shall designate some other person for this latter purpose. He shall exercise all the powers conferred and perform all the duties imposed upon such officers by general law and shall be subject to the obligations and penalties imposed by general law. He shall also perform such other duties as may be imposed upon him by the board of county supervisors."

Code § 15.1-616 provides:

"The board of county supervisors shall establish a schedule of compensation for officers and employees which shall provide uniform compensation for like service. The compensation prescribed shall be subject to such limitations as may be made by general law."

Code § 15.1-619 provides in pertinent part:

"All officers and employees of the county shall be paid regular compensation and the fee system as a method of compensation in the county shall be abolished, except as to those officers not affected by the adoption of this form of county organization and government."

Marshall contends, however, and the trial court held, that by Code § 14.1-155.1 [2] she was entitled to a salary not less than the compensation which she would have earned under the fee system. The Board concedes that the sum of $39,264.36 is the aggregate amount of the difference between what Marshall was paid from the beginning of her term and what she would have earned if she had been compensated on a fee basis.

In support of her position, Marshall called as a witness Harry B. Wright, the President of the Clerk's Association at the time § 14.1-155.1 was enacted and a member of the Association committee which drafted the then proposed legislation. He testified, in essence, that the Association's proposal was based on the belief that all clerks, regardless of the form of government under which they operated, should receive equal compensation for equal work. He also testified, however, that members of the General Assembly chose the word "salary" as it appears in the statute.

Marshall also called as a witness Thomas R. Miller, a retired clerk of the Hustings Court for the City of Richmond. Miller testified that he took no active part in proposing § 14.1-155.1 or in testifying before the legislative committee responsible for the statute, although he was involved in proposing Code § 14.1-155, which increased the maximum compensation for clerks and was made specifically applicable to clerks on a salary basis. He stated that the purpose of § 14.1-155 was to "equalize, to pay the clerks for doing the same amount of work." Although Miller testified that there "is no minimum salary to a clerk of a court of record,"

---

[2] Acts 1966, c. 597, amended the Code by adding § 14.1-155.1, which reads in pertinent part as follows:

"§ 14.1-155.1. Notwithstanding any other provisions contained in this article, the maximum compensation authorized for the clerks of courts of record is hereby increased by twenty per centum. Nothing herein shall be construed to alter or affect in any manner increases heretofore provided.

"This section shall apply notwithstanding the provisions of any other law which places any such clerk on a salary basis; . . . .

"*In any city or county, whether or not such county has adopted an optional form of government, and in which the clerk of any court of record is on a salary basis, the minimum salary payable to such clerk shall not be less than the minimum salary provided under the general law.*

"The provisions of this section shall apply with respect to the compensation year nineteen hundred sixty-six, and to every compensation year thereafter until otherwise provided by law." (Emphasis added.)

he also "construed the minimum that [he] could get as the amount of fees [he] took in up to what [he] was restricted to under general law."

Marshall testified that she first learned what salary she would receive shortly after her election, but before she took office, and she was "highly disappointed" when she found out the amount. She testified that when she ran for the office she was aware of what the salary "should be under the general law."

The trial court held that the minimum salary payable to Marshall was the maximum compensation which she could retain pursuant to Code §§ 14.1-143 *et seq.* if she were on the fee system of compensation. The court's holding was based primarily on its belief that a decision to allow the Board to fix Marshall's salary would have the effect of subordinating a constitutional officer to the board of supervisors of a county. This conclusion, however, ignores the effect of the enabling legislation under which a county executive form of government functions.

Section 110 of the 1902 Constitution, as amended, in effect in 1933 when Albemarle County adopted the county executive form of government, provided for the election of specified county officers, including the clerk, whose duties and compensation "shall be prescribed by general law." This section also authorized the General Assembly to "provide for complete forms of county organization and government" different from that prescribed in the Constitution. Pursuant thereto, Code §§ 15.1-588 *et seq.*, and predecessor statutes, providing for a county executive form of government, permitted the elimination of certain constitutional offices, such as those of the commissioner of the revenue and of the treasurer, and the consolidation of various functions under department heads appointed by the board of supervisors.

The constitutionality of the enabling legislation was upheld in *Lipscomb* v. *Nuckols*, 161 Va. 936, 172 S.E. 886 (1934), where we said that "[t]he power to provide for a complete change in the form of county organization and government includes the power to abolish the old form and all offices thereunder." 161 Va. at 948, 172 S.E. at 890. Therefore, the General Assembly could validly authorize the Board in its discretion to determine the clerk's salary. Indeed, in oral argument Marshall conceded that prior to the enactment of § 14.1-155.1 in 1966, the Board had the

power to set the clerk's salary, irrespective of the fee provisions of §§ 14.1-143 *et seq.*

■ If the construction which the trial court placed upon § 14.1-155.1 is correct, then the enactment of that statute resulted in the repeal by implication of Code § 15.1-619, which expressly abolished the fee system as a method of compensation for clerks in counties operating under the county executive form of government, and of other statutes. Thus, the Board's authority under Code § 15.1-600 to fix the compensation of county officers, and its mandate under Code § 15.1-616 to establish a uniform schedule of compensation would be compromised. We perceive no such intent in the language of § 14.1-155.1, regardless of what may have been the hopes and expectations of those who sought to have the legislation passed. Repeal of a statute by implication is not favored, and, indeed, there is a presumption against a legislative intent to repeal "where express terms are not used, or the later statute does not amend the former." *Newmarket, &c., Co.* v. *Keyser,* 119 Va. 165, 170, 89 S.E. 251, 253 (1916). If apparently conflicting statutes can be harmonized and effect given to both of them, they will be so construed. *Standard Drug* v. *General Electric,* 202 Va. 367, 378-79, 117 S.E.2d 289, 297 (1960).

■ Fee system clerks do not receive salaries. Under §§ 14.1-143 *et seq.,* their compensation is based upon fees collected, less expenses, subject to the maximum limits established by statute. Thus, the annual compensation of such a clerk cannot be precisely determined until the expiration of the year, and it is subject to fluctuations reflecting the state of the economy and the volume of business transacted in the clerk's office.

To interpret § 14.1-155.1 to guarantee salaried clerks the same income as fee system clerks who collect an equal amount of fees, it is necessary to infer that "salary", as used in the third paragraph of the statute, means "compensation", so that salaried clerks shall receive not less than the minimum compensation provided under general law. We do not consider this to be a fair inference.

In determining legislative intent from the statutory language, words should be given their ordinary meaning. *Superior Corp.* v. *Commonwealth,* 147 Va. 202, 136 S.E. 666 (1927). Moreover, where a word is used in different sections of a statute and its

meaning is clear in all but one instance, "[t]he same meaning . . . will be attributed to it elsewhere unless there be something in the context which clearly indicates that the Legislature intended some other and different meaning . . . ." *Postal Telegraph Co.* v. *Farmville, &c. R. Co.*, 96 Va. 661, 664, 32 S.E. 468, 470 (1899).

Throughout Article 3, Chapter 2 of Title 14.1, the statutes consistently distinguish between "compensation", derived from fees, and "salaries [which] shall be in full compensation for services and shall be in lieu of the retention by . . . clerks of any and all official fees" or other compensation. Code §§ 14.1-144, -144.1, and -149; *see also* Code § 14.1-162. Therefore, we conclude that the General Assembly could and did intend that "salary" not be used interchangeably with "compensation" in § 14.1-155.1.

■ By letter opinion dated November 29, 1966, the Attorney General answered an inquiry from the Clerk of the Circuit Court of Fairfax County as to the "minimum salary" payable to him under pertinent statutes, including § 14.1-155.1. The Attorney General gave his opinion that the clerk was entitled to the minimum sum of $1,000 under Code § 14.1-164, and if he performed the duties of clerk of the board of supervisors, to the minimum sum of $100 under Code § 33-160 for those services. *Report of the Attorney General* (1966-67), at 56. This opinion was reaffirmed in principle by opinion of the Attorney General dated November 21, 1973. *Report of the Attorney General* (1973-74), at 63.

This construction of § 14.1-155.1, given by two Attorneys General over a period of seven years, is of course not binding on us, but it is entitled to due consideration. *Barber* v. *City of Danville*, 149 Va. 418, 424, 141 S.E. 126, 127 (1928). The statute was amended in 1970, but there has been no amendment to the language construed by the Attorney General in 1966.

Code § 14.1-164 was repealed in 1970. Code § 33-160, subsequently reenacted as Code § 33.1-245, is not applicable to Albemarle County because Marshall does not serve as clerk of the Board. Code §§ 14.1-144, in effect in 1966, and 14.1-144.1, enacted in 1970, apply only to clerks in cities. Therefore, we conclude that there is no minimum salary provided under general law to the clerk in Albemarle County and that she is not entitled to receive at least the amount she would have received

under the fee system. Marshall could have and should have ascertained the method of compensation when she sought election to the office of clerk in 1967. Indeed, she admitted that she was informed of the salary after her election but before her term began. She is entitled to receive no more than the salary already paid to her by the Board and accepted by her for six years. Accordingly, we hold that the trial court erred in entering judgment for Marshall for $39,269.36.

## II

### Salaries of the Deputy Clerks.

■ The Board, pursuant to § 15.1-600, fixes the annual salaries of deputy clerks, duly appointed by Marshall, and pays these salaries in regular installments directly to the deputies. The State Compensation Board, pursuant to Code § 14.1-141,[3] has determined the number of deputies required for the efficient operation of Marshall's office, and "what should be the compensation" of such deputies.

During the year 1973 the salaries paid by the Board to the deputies were less than the salaries approved by the Compensation Board. Marshall maintains, and the trial court held, that the deputies' salaries were set by the Compensation Board and, therefore, that the deputies are entitled to the difference between what they were paid by the Board for 1973 and their salaries as approved by the Compensation Board. We disagree.

Under § 15.1-619 the fee system was abolished as a method of compensating county officers and employees. This statute, however, requires that fees provided for by general law be collected and paid into the county treasury, and that one-third of the excess fees over the allowance to which the officer would be entitled under the fee system and the expenses allowed by the

---

[3] Code § 14.1-141 provides in pertinent part:

"The State Compensation Board shall determine: (1) How many deputies and assistants, if any, are necessary to the efficient performance of the duties of the office of the officer filing a report required by § 14.1-136, (2) what should be the compensation of such deputies and assistants, (3) what allowance, if any, should be made for office expenses and premiums on official bonds, and (4) the manner in which such compensation should be paid or such allowance made. . . ."

Compensation Board shall be paid into the State treasury and the other two-thirds retained by the county.

The State Compensation Board does not set the salaries of deputy clerks. It merely determines the maximum salaries for a specified number of deputies that will be approved for purposes of computing allowable expenses for a clerk's office.

John M. Rassnick, Executive Secretary of the State Compensation Board, conceded that the only interest of that agency is in the final division of the excess fees between the State and local political subdivisions. He agreed that the deputies in Albemarle County are county employees, whose salaries are set by the Board of Supervisors. He testified that the Compensation Board will approve as clerk's expenses the salaries paid to deputies up to the maximum salaries determined by the Compensation Board. As Marshall's deputies were paid less than the salaries allowable by the Compensation Board, only the actual salaries are allowable as expenses of the clerk's office.

Rassnick also testified that deputies may be paid more than the salaries that would be allowed by the Compensation Board, but the excess would not be allowable as an expense of the clerk's office in determining excess fees. Therefore, in Albemarle County any excess of salaries in the clerk's office over those determined by the Compensation Board to be allowable, would be paid by the county. The deputy clerks were entitled to receive for 1973 only the salaries paid to them by Albemarle County, and the trial court erred in awarding them the difference between those salaries and the salaries determined to be allowable by the State Compensation Board.

For the reasons assigned the judgment order entered in each case is reversed and final judgment is entered for the Board of Supervisors of Albemarle County.

Record No. 740513, *Reversed and final judgment.*
Record No. 740514, *Reversed and final judgment.*