# Richmond

J. S. McDonald, et al. v. Bertie McDonald.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*Cocke, Hazlegrove & Shackelford,* for the appellants.

*M. P. Farrier,* for the appellee.

HOLT, J., delivered the opinion of the court.

We are to determine the effect on dower rights of a deed from a husband to his wife made in circumstances to be noted.

In September, 1935, Bertie McDonald, widow of A. B. McDonald, filed her bill in this cause. To it J. S. McDonald,

Mary McDonald, Wm. L. McDonald and Geo. B. McDonald were made parties defendant. They are the children of A. B. McDonald by a former marriage. He died intestate in October, 1934, and was at that time the owner in fee of a tract of about 200 acres of land in Giles county. The purpose and prayer of this bill is to have dower assigned in the land decedent owned at the time of his death. These defendants in their answer and cross bill contend that this widow has no right to claim dower and for these reasons: They say that after marriage, A. B. McDonald bought and paid for, out of his own funds, a tract of 77¾ acres of land, the purchase price being $4,500, and that by his direction conveyance was made to his wife for her life, with remainder to himself in fee. A copy of that deed is exhibited with the cross bill. This they contend was in lieu of dower.

A replication to the cross bill was filed, admitting in substance the facts there stated, but denying their legal effect. No testimony was taken, but the cause was heard upon the issues thus made.

The chancellor, upon consideration, was "of opinion that complainant is entitled to all the relief prayed for in her bill" and so decreed.

There was a petition to rehear. Upon its consideration, he adhered to his conclusions first reached, and so decreed. Hence this appeal.

What is jointure, and how did it come about?

"Soon after the first introduction of *uses* into England (in the latter part of the reign of Edward III, about A. D. 1370), and while they were as yet only *equitable estates,* they became so prevalent by reason of the escape they afforded from many of the feudal burdens attaching to the legal title held by feudal tenure, * * *." Minor on Real Property, section 320.

The wife was not dowable of uses, for they were equitable estates.

This situation brought about the statute of Uses of 27 Hen. VIII, c. 10:

"But when the statute of Uses (27 Hen. VIII, c. 10) was enacted, its chief object was *to convert uses into legal estates,* in which in the main it succeeded. In consequence of this enactment the husband at once became *legally seised* of the lands he had held before only by way of *use,* and all the then wives in England, who had such marriage settlements as above described, would themselves have had *a joint estate at law* such as they would before have in equity. Furthermore, the equitable estate of inheritance belonging to the husband having been thus converted by the statute into a legal estate of inheritance, the then wives would become *dowable* in those lands, as well as entitled to the *jointure* created by the marriage settlement, and would thus have received a *double* provision, had not the statute of Uses itself, in anticipation of this difficulty, declared that a jointure, provided it had certain attributes, should constitute an absolute bar to the widow's dower. * * *" Id.

Blackstone thus defines jointure, Book II, section 184:

"A jointure, which, strictly speaking, signifies a joint estate, limited to both husband and wife, but in common acceptance extends also to a sole estate, limited to the wife only, is thus defined by Sir Edward Coke; 'a competent livelihood of freehold for the wife, of lands and tenements; to take effect, in profit or possession, presently after the death of the husband; for the life of the wife at least.' This description is framed from the purview of the statute 27 Hen. VIII, c. 10 (1535), before mentioned; commonly called the statute of *uses,* of which we shall speak fully hereafter."

Its requisites were:

"But then these four requisites must be punctually observed: 1. The jointure must take effect immediately on the death of the husband. 2. It must be for her own life at least, and not *pur autre vie* (for the life of another), or for any term of years, or other smaller estate. 3. It must be made to herself, and no other in trust for her. 4. It must be made, and so in the deed particularly expressed to be, in satisfaction of her whole dower, and not of any particular part of it. If the jointure be made to her *after* marriage,

she has her election after her husband's death, as in dower *ad ostium ecclesiae,* and may either accept it, or refuse it and betake herself to her dower at common law; * * *." Id. section 185.

In Tiffany on Real Property (2d Ed.), section 226, the requirements are thus stated:

■ "* * * (1) It must commence immediately on the death of the husband; (2) it must be an estate for the wife's life, at least, and not a smaller estate; (3) it must be made to herself, and not in trust for her; (4) it must be made, and expressed to be, in satisfaction of her whole dower, and not of a part; (5) it must be made before marriage. * * *"

To the same effect see Minor on Real Property, section 321.

These American authorities hold that it must be made before marriage. Blackstone indicates that it might be made after marriage, but if made after marriage, she is put to her election. She might hold to what she had taken or she might take what the law gave her by way of dower. Since she was put to her election, she could not enjoy both estates.

The statutory requirements for jointure in Virginia differ materially from those of the English statute of Uses. Code 1936, section 5120, reads:

"Jointure in bar of dower; effect of conveyance or devise. —If any estate, real or personal, intended to be in lieu of dower, shall be conveyed or devised for the jointure of the wife, such conveyance or devise shall bar her dower of the real estate, or the residue thereof, and every such provision, by deed or will, shall be taken to be intended in lieu of dower, unless the contrary intention plainly appear in such deed or will, or in some other writing signed by the party making the provision."

It may consist of any estate, real or personal, intended to be in lieu of dower, either conveyed or devised, and every such provision shall be taken as intended in lieu of dower, unless the contrary intention plainly appears in the deed

or will, or in some other writing signed by the party making the provision.

Under the English statute the bar is absolute. In Virginia, if the conveyance or devise be before marriage, without the woman's assent in writing or while she is yet an infant, or during coverture, she may waive jointure and demand dower. She is put to her election. Code 1936, sections 5120, 5121.

■ It will be observed (and this is important), that under the English statute jointure must take effect immediately upon the husband's death. We have no such statutory requirements. Of course if an election may be made, it should not be made before that time, for if it were, the husband might thereafter acquire property which would have made an earlier settlement grossly inequitable. It is not until his death that a decision is possible, based upon final value of dower released, and it is doubtless for this reason that a decision is there postponed.

Jointure which is in lieu of dower, under the English statute of Uses, in order to be an absolute bar, had among its requirements these: It must have antedated marriage, and it must take effect immediately upon the husband's death.

■ In Virginia it may be made before marriage or during coverture. If statutory provisions are complied with, a contract before marriage usually goes into effect before marriage or as of its date. Here, at least, benefits conferred are not postponed until the husband's death, or until dower, of which it stands in lieu, might have been claimed. A man may settle funds upon his intended wife or convey to her a portion of his lands. A provision so made goes into immediate effect. The mere fact that jointure is in lieu of dower does not postpone its benefits until dower could be claimed.

It is only when there has been no assent in writing to the ante-nuptial settlement, or when the woman is an infant, or when it is made during coverture, that any question can arise.

Before the Code of 1849, our legislature, time after time, followed the English rule. In the Code of 1819, vol. 1, p. 404, it is said:

"11. Also, if any estate be conveyed by deed or will, either expressly or by averment, for the jointure of the wife, in lieu of her dower, to take effect in her own possession, immediately on the death of her husband, and to continue during her life at least, determinable by such acts only as would forfeit her dower at the common law, such conveyance shall bar her dower of the residue of the lands, tenements, or hereditaments, which at any time were her said husband's. But, if the said conveyance were before the marriage, and during the infancy of the *feme,* or if it were made after marriage, in either case, the widow may, at her election, waive such jointure, and demand her dower."

In the Code of 1849, p. 474, this provision, "to take effect in her own possession, immediately upon the death of her husband," is omitted. The statute in its revised form then read:

"4. If any estate, real or personal, intended to be in lieu of her dower shall be conveyed or devised for the jointure of the wife, such conveyance or devise shall bar her dower of the real estate or the residue thereof.

"5. But if such conveyance or devise were before the marriage, without the assent or during the infancy of the *feme,* or if it were after marriage, in either case the widow may, at her election, waive such jointure and demand her dower. And when, she shall demand and receive her dower, the estate so conveyed or devised to her shall cease and determine."

It did appear in the original draft of the Code, as submitted by its revisors (Report of Revisors, vol. II, p. 565), but, as we have seen, was omitted from the Code in its final adoption and has been omitted in all subsequent revisions, including that of 1919. Plainly the legislature must have meant something in deliberately omitting this immemorial essential. It could not have intended to substitute

for the express statutory mandate recommended the uncertainties of implication and construction.

█ The question of intention was a troublesome one. *Ambler* v. *Norton*, 4 Hen. & M. (14 Va.) 23. The legislature undertook to settle it and in 1866, Acts of Assembly, 1865-66, said: "Every such provision by deed or will, shall be taken to be intended in lieu of dower, unless the contrary intention plainly appears in such deed or will, or in some other writing, signed by the party making the provision."

Of course this provision must be reasonably construed. The estate given must bear some fair relation in value to that of the estate released. No one would contend that a deed to a wife of a cemetery lot would release dower in a valuable estate.

We have no case which gives us any real help except that of *Land* v. *Shipp*, 98 Va. 284, 36 S. E. 391, 394, 50 L. R. A. 560. In that case it appears that Laura L. Land and John W. S. Land were married on March 9, 1890. They lived together as husband and wife until June 27, 1896, when they signed and acknowledged a deed of separation, duly admitted to record. It recites that owing to incompatibility of temperament, they found it impossible to live together and desired that each might have the same liberty of person and personal rights, and the same power to manage, control, use, alien, or convey their respective separate estates, both real and personal, which they, or either of them, then owned or might thereafter acquire, as if they were unmarried. The consideration therefor was $400 in cash paid by the husband to the wife. On the date of the deed of separation, the husband executed a deed of trust in which the wife did not unite on his land to secure a debt of $569.47, borrowed money, out of which the wife was paid the $400. Default was made in the payment of this debt, and this land was sold by a trustee in the lifetime of the husband to H. E. Shipp for $3,050, out of which liens were paid thereon and the balance was paid to the husband. Shipp on May 26, 1898, conveyed this land to Emerson Land for $3,500, hav-

ing previously sold timber on it for $250. The husband died, Laura L. Land instituted her suit and claimed dower in the farm then owned by Emerson Land and in the $250 received for timber sold from it. She was permitted to recover. The court in its opinion said:

"If, after the husband's death, the widow accepts the provision made for her in lieu of dower, she bars herself of dower, but if she has received the provision during her husband's life, and has *spent* or *wasted* it, she may take the dower as if it had not been made. It is necessary, in order to estop her, that she should have enjoyed the provision, or a part at least, after her husband's death. 5 Am. & Eng. Enc. Law, 911, and authorities cited." Italics supplied.

We may paraphrase this statement thus: If, after the husband's death, his widow accepts the provisions made by him for her in his lifetime and has neither spent ·nor wasted it, she bars herself of dower. That is to say, she could not keep the $400 if she still had it and claim dower in addition.

When jointure is provided for during coverture, the touchstone is this: Did the widow, at her husband's death, still hold property which she had accepted in lieu of dower? Plainly no election could be made had she spent or wasted it. If she still held it, the necessity for election then arose.

In the instant case, there can be no doubt that the wife could not retain the seventy-seven-acre tract and claim dower in lands still owned by the husband at his death, had the deed to her given her a life interest to take effect upon the happening of that event. She has been given that and more. She has neither spent nor wasted that part of it which took effect upon her husband's death, but still has ·it and so is put to her election.

In Minor on Real Property, section 323, it is said:

"The third requisite under the English statute is that the jointure must take effect *immediately upon the husband's death.* While the Virginia statute does not expressly so provide, a similar requirement is found therein *by implication,* for it is then that her election is to be made, and if she

has received the provision *during her husband's life* and *has spent or wasted it,* she may still take her dower as if no provision had been made. She must therefore be able to enjoy the provision, or *part of it,* at least, *after her husband's death."* Citing *Land* v. *Shipp.*

Here she has neither spent nor wasted provisions made for her during coverture, certainly not the life estate which followed her husband's death.

Having made her election, she must abide by it.

For reasons stated, and because fair dealing demands it, the decree appealed from should be reversed, and it is so ordered.

*Reversed.*

EGGLESTON, J., dissenting.

The majority opinion holds that where, at the direction of the husband and for a consideration furnished by him, property is conveyed to the wife during the life of the husband for her immediate possession and enjoyment, and is still owned by her at the time of the husband's death, then, under Code, section 5120, such conveyance is presumed to be in lieu of dower of the wife in all of the husband's real property, and she must under Code, section 5121, elect either to retain said property so conveyed to her or to demand her dower.

The same result, of course, obtains where the husband makes the conveyance directly to his wife.

As I understand it, the majority opinion reaches this conclusion:

(1) Because there is in Code, section 5120 (creating jointure), no express provision that the wife's enjoyment of the property must take effect immediately upon the husband's death; and

(2) Because of the holding in *Land* v. *Shipp,* 98 Va. 284, 36 S. E. 391, 50 L. R. A. 560.

It is true that there was in the original English statute (27 Hen. VIII, c. 10), and in the original Virginia statute

(Act of 1785, ch. 65, sec. 6; Code of 1819, vol. 1, ch. 107, sec. 11), a provision that to constitute jointure the estate of the wife must take effect immediately upon the death of the husband. It is also true that this provision was eliminated in the Code of 1849 and is not found in the present statute.

The present statute (Code, section 5120) does not undertake to define jointure. The language is: "If any estate, real or personal, intended to be in lieu of dower, shall be conveyed or devised for the *jointure* of the wife," etc.

Now the word "jointure" has had a technical and well-defined meaning in English and American jurisprudence for many years. In Bouvier's Law Dictionary (14th Ed.), page 758, it is defined as "A competent livelihood of freehold for the wife, of lands and tenements, to take effect, in profit or possession, presently after the death of the husband, for the life of the wife at least." See also, 2 Blackstone, Comm. 137; Tiffany on Real Property (2d Ed.), sec. 226.

Consequently in Minor on Real Property (2d Ed.), sec. 303, p. 389, the author says: "The third requisite under the English statute is that the jointure must take effect immediately upon the husband's death. While the Virginia statute does not expressly so provide, a similar requirement is found therein by implication, for it is then that her election is to be made," etc. Citing *Land* v. *Shipp, supra.*

In Harrison on Wills and Administration, sec. 37(1), p. 42, speaking of the present Virginia statute, the author says: "In statutory as at common law it takes effect immediately upon the death of the husband."

In *Land* v. *Shipp, supra,* Judge Cardwell held that the wife's dower was not barred by a gift of $400 which she had wasted during her husband's lifetime, because she was not able to enjoy the property given her in lieu of dower after the husband's death. Inferentially, at least, the argument in the opinion seems to be that if she had not wasted the money and had been able to enjoy it after her husband's death, then her dower would have been barred.

But Judge Cardwell also said in the same opinion (98 Va. 284, at page 291, 36 S. E. 391, at page 394, 50 L. R. A. 560) : "Sections 2270 (now 5120) and 2271 (now 5121) of the Code as to the jointure differ from jointure at common law only in that, under the statute, it may be of personal as well as real estate. At common law the essentials of jointure were: It must consist of an estate or interest in land, to take effect in possession or profit immediately on the death of the husband, and must be made in satisfaction of the dower, and so appear in the deed. It is an absolute bar only when made before marriage; if made after marriage, it only puts the wife to her election whether to accept the provision, or claim dower.

"Under the statute, as well as at common law, a provision in lieu of dower is to take effect at the death of the husband, for it is then that the widow is put to her election," etc.

In 6 Virginia Law Register, at page 165, there is a note on *Land* v. *Shipp, supra,* presumably written by the then editor, Mr. W. M. Lile, in which it is said: "The attention of the profession of the State is called to two important principles established in the excellent opinion of Judge Cardwell, foregoing: * * * Second: That under section 2270 (now 5120) of the Code, the 'jointure' therein referred to as operating to bar dower, does not include property in which a present estate is settled upon the wife, but is confined to settlements to take effect at the death of the husband." After calling attention to the language of section 2270 (now 5120), the note continues: "Unless the term 'jointure' here used be given its technical meaning, as in the principal case, the result would be that every gift from husband to wife, however insignificant in value, would operate (under sec. 2271 [now 5121]) to put the wife to her election between such gift and her dower rights, at the husband's death."

Under Code, section 5120, the annotator to the present Code has this note: "Under the statute, as well as at common law, a provision in lieu of dower is to take effect at

the death of the husband. See *Land* v. *Shipp*, 98 Va. 284, 36 S. E. 391 [50 L. R. A. 560]."

We thus see that even since the decision in *Land* v. *Shipp*, *supra*, every authority who has spoken on the subject, including Mr. Lile, Mr. Minor, Mr. Harrison, and the annotator of the Code, has interpreted the present statute as meaning that jointure, in order to bar a wife's dower, must be limited to an estate to take effect at the death of the husband.

Furthermore, the profession generally has placed the same interpretation on the present statute for nearly one hundred years, that is, since it became effective in 1849.

According to the opinion, if a husband deeds his home to his wife or buys a home and has the title placed in her name during his lifetime, and she is still enjoying the property at the date of his death, then this is presumed to be in lieu of her dower in all of his real estate, and not merely a gift from him to her.

I am confident that the profession will be surprised to learn that this is and has been the law since 1849.

It does not strike me as being sound, and if anything said in *Land* v. *Shipp*, *supra*, furnishes the basis for any such conclusion, I think it should be repudiated.

HUDGINS and SPRATLEY, JJ., concur in dissent.