# Richmond

## CORRIE A. FULLER v. VIRGINIA TRUST COMPANY, ETC., ET ALS.

March 5, 1945.

Record No. 2888.

Present, All the Justices.

The opinion states the case.

*James S. Easley* and *Edwin B. Meade*, for the appellant.

*J. Randolph Tucker*, *Irby Turnbull* and *W. B. Settle*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

Dr. Rawley H. Fuller, a resident of South Boston, Virginia, died testate on July 24, 1943, survived by his widow, Corrie A. Fuller; Rawley H. Fuller, Jr., and Sarah F. Hudgins, children of a former marriage; William Allen Fuller, son of testator and Corrie A. Fuller; and Mary Anne Fuller, an adopted infant daughter. The Virginia Trust

Company, of Richmond, Virginia, was named and qualified as executor under the will.

A few days after it qualified, the executor, without the consent of the beneficiaries, sold and later conveyed the South Boston Hospital and equipment, owned and operated by testator at the time of his death, to T. C. Watkins, Jr., and I. K. Briggs for $40,000. The beneficiaries unsuccessfully attacked this sale in another suit. Corrie A. Fuller renounced the provisions made for her in the will and elected to claim dower in the real estate and her statutory distributive share of the personalty of her husband. The widow then filed a bill against T. C. Watkins, Jr., and I. K. Briggs claiming dower in the South Boston Hospital. Thereafter, the executor instituted a separate and independent suit against the widow, the beneficiaries named in the will, and T. C. Watkins, Jr., and I. K. Briggs, purchasers of the hospital and equipment. It was alleged in the bill that the appraised value of the personal property owned by the estate was $73,966; that the appraised value of the real estate was $37,500; and that, since the widow had elected to claim dower, she should be required to transfer to the executor a house and lot in the town of South Boston which her husband had caused to be conveyed to her and which he intended to be for jointure and in lieu of dower. This suit was consolidated with the suit instituted by Corrie A. Fuller against T. C. Watkins, Jr., and I. K. Briggs.

Corrie A. Fuller thereupon filed a separate answer to the executor's bill, in which she denied that her husband intended the conveyance to be for jointure and in lieu of dower. She admitted that her husband had paid McCanless and his wife, the grantors in the deed, the sum of $8,500 for the house and lot described in the conveyance, but alleged that, at the time payment was made and the deed delivered, her husband told her in the presence of others that the property described was a birthday gift to her.

None of the adult beneficiaries contends that the testator intended the conveyance in question to be other than a simple deed of gift, as claimed by the widow.

The executor elected to submit its case on the bill and answer. Thereupon the respondent introduced several witnesses who testified that Dr. Fuller paid $8,500, the full consideration, for the property, and that, when he delivered the deed to his wife, he said, "Here is your birthday present." On motion of the executor, all of the parol testimony setting forth the facts and circumstances surrounding the purchase of the property and the delivery of the deed, was excluded except that part which tended to prove that Dr. Fuller paid the consideration. The court entered a decree declaring that, since the widow had renounced the will of her husband and elected to claim dower in all real estate owned by him, the property conveyed to her by McCanless and wife reverted to the estate of the testator. The widow was ordered forthwith to convey the property to the executor, and, upon her failure to do so, a commissioner was appointed to execute such a conveyance with special warranty of title. From that decree this appeal was allowed.

The dominant question presented is whether or not Dr. Fuller intended the conveyance to his wife to be for jointure and in lieu of dower.

The decision turns upon the meaning of the word "jointure," as used in the statute. Jointure, meaning a provision or an interest of a wife in her husband's real estate, originated about 1370 in the reign of Edward III. It was a device to which an expectant husband resorted in order to give his wife at his death an interest in a portion of the lands held to his use, because at common law the wife had no dower interest in her husband's lands unless he owned the fee. When uses were converted, in part at least, by the statutes of 27 Henry VIII to legal estates, the wife upon whom such marriage settlement had been made became endowed with an interest in all other lands so owned by the husband. Without more, a wife who owned an estate created by the marital settlement would also be entitled to dower in all other lands of her husband, and hence she would receive a double portion in the event she survived him. To avoid this result,

the statute of uses provided that "jointure," as therein defined, should be an absolute bar to a widow's dower. It is said in 2 Minor's Institutes, 4 ed., 177-8, that, in order for the conveyance or devise to bar dower, the jointure

"1. Must be an Estate of *Freehold* in *lands* or *Tenements*.

"2. Must take Effect *Immediately* at the Husband's Death, and be for the *Life of the Wife at Least*.

"3. Must be made *to Herself*, and not to another in *Trust for Her*.

"4. Must be particularly *Expressed* to be in *Satisfaction* of her whole Dower.

"5. Must be made *Before Marriage*."

While some authorities refer to such provisions for the wife as "common law jointure," as pointed out, the word originated in the early English statutes and not in the decisions of the common law courts. These statutes, with some modifications, were in force in Colonial Virginia. In 1785 the General Assembly of Virginia passed the following act:

"If any estate be conveyed by *deed* or will, either expressly or by averment, for the jointure of the wife, in lieu of her dower, to take effect in her own possession, *immediately on the death of her husband*, and to continue during her life at the least, determinable by such acts only as would forfeit her dower at the common law, such conveyance shall bar her dower of the residue of the lands, tenements, or hereditaments, which at any time were her said husband's. But if the said conveyance were before the marriage, and during the infancy of the feme, or if it were made after marriage, in either case the widow may at her election waive such jointure, and demand her dower." Acts of 1785, ch. 65, sec. 6.

Under this act this court held, in *Blunt* v. *Gee*, 5 Call (9 Va.) 481, that a bequest or gift of personal property or estate was no bar to the widow's dower in the lands of her husband. To the same effect, see *Wiseley* v. *Findlay*, 3 Rand. (24 Va.) 361.

The construction of this statute was before the court again in *Ambler* v. *Norton*, 4 Hen. & M. (14 Va.) 23. It

was held that where any estate was conveyed by deed or will and intended for a wife's jointure in lieu of dower, that intention, though not expressed in the conveyance, could be established by parol testimony, provided such intention could be reasonably inferred from the situation of the parties and the circumstances of the deceased husband at the time the provision was made.

Two important changes were made in the statute as codified in 1849. The meaning of the word "estate" was enlarged to include personalty as well as realty, and no attempt was made to define jointure. The pertinent part of the statute, as changed, read: "If any estate, real or personal, intended to be in lieu of her dower shall be conveyed or devised for the jointure of the wife, such conveyance or devise shall bar her dower of the real estate or the residue thereof." Code of 1849, p. 474, sec. 4. See *Craig* v. *Walthall*, 14 Gratt. (55 Va.) 518; *Higginbotham* v. *Cornwell* (1851), 8 Gratt. (49 Va.) 83.

It will be noted that a literal meaning of the language used brings within the influence of the statute any estate conveyed to the wife by the deed or will of any party, provided only that the grantor or testator executed the instrument intending such provision to be for jointure and in lieu of dower. The intention of the party conveying or devising the estate was and is the controlling feature. The revisors of the Code of 1849 made no change in the method of proving the pertinent fact of this intention. As revealed in the early cases cited, it was not always easy to determine the intention of the husband, who had made provisions for his wife in his will, unless it was expressly stated in the will that such provisions were to be regarded for jointure and in lieu of dower.

The method of proving such intention was changed by the 1866 amendment, which provided: " * * * , and every such provision, by deed or will, shall be taken to be intended in lieu of dower, unless the contrary intention plainly appear in such deed or will, or in some other writing, signed by the party making the provision." Acts of 1865-6, p. 166.

The statute remained as thus amended until 1938. There seems to have been some doubt prior to *Land* v. *Shipp*, 98 Va. 284, 36 S. E. 391, 50 L. R. A. 560, decided June, 1900, as to whether the word "jointure," as used, meant an estate to "take effect immediately at the husband's death, and be for the life of the wife at least," or an estate to take effect *in praesenti*. Apparently this doubt was removed by the following statement of the court in that case: "At common law the essentials of jointure were: It must consist of an estate or interest in land, to take effect in possession or profit immediately on the death of the husband, and must be made in satisfaction of the dower, and so appear in the deed. It is an absolute bar only when made before marriage; if made after marriage, it only puts the wife to her election whether to accept the provision, or claim dower.

"Under the statute (Code of 1887, sec. 2270), as well as at common law, a provision in lieu of dower is to take effect at the death of the husband, for it is then that the widow is put to her election as to whether she will accept the jointure, or claim dower in her husband's estate, and the provision of the statute (sec. 2271) is, that 'when she shall elect and receive her dower, the estate so conveyed or devised to her shall cease and determine.' "

Dr. W. M. Lile, commenting on this decision in 6 Virginia Law Register, at page 165, said: "The attention of the profession of the State is called to two important principles established in the excellent opinion of Judge Cardwell, foregoing: * * * Second: That under section 2270 (now 5120) of the Code, the 'jointure' therein referred to as operating to bar dower, does not include property in which a present estate is settled upon the wife, but is confined to settlements to take effect at the death of the husband. * * * . Unless the term 'jointure' here used be given its technical meaning, as in the principal case, the result would be that every gift from husband to wife, however insignificant in value, would operate (under sec. 2271 (now 5121)) to put the wife to her election between such gift and her dower rights, at the husband's death."

The opinion was so construed by the author in Minor on Real Prop., 2 ed., vol. 1, sec. 303, p. 389. He said: "The third requisite under the English statute is that the jointure must take effect *immediately upon the husband's death.* While the Virginia statute does not expressly so provide, a similar requirement is found therein *by implication,* for it is then that her *election* is to be made, and if she has received the provision *during her husband's life* and *has spent or wasted it,* she may still take her dower as if no provision had been made. She must therefore be able to enjoy the provision, or *part of it,* at least, *after her husband's death.*"

In Harrison on Wills and Adm., sec. 37(1), p. 42, this is said: "In statutory as at common law it (jointure) takes effect immediately upon the death of the husband."

One of the essential elements in practically every definition of jointure in lieu of dower is that it is an estate that must take effect in possession immediately on the death of the husband and continue during the life of the wife at least. See 28 C. J. S. 122; Tiffany on Real Estate, 2 ed., 226; Scribner on Dower, 2 ed., p. 395; Bouvier's Law Dic., 14 ed., p. 758; 2 Blackstone's Comm. 137; Cyc. Law Dic., 3 ed.; 2 Thompson on Real Prop., Perm. Ed., sec. 925(866).

However, in the majority opinion in *McDonald* v. *McDonald,* 169 Va. 752, 194 S. E. 709, it was held that an estate conveyed to the wife to take effect *in praesenti* was construed to be intended for jointure and in lieu of dower. Three of the seven justices vigorously dissented and cited in support of their conclusion many of the authorities cited herein. When the opinions were announced on January 13, 1938, the General Assembly was in session. On January 17, four days thereafter, Senator T. Russell Cather introduced a bill amending section 5120 of the Code, the effect of which was to restrict or limit the meaning of jointure to an estate to take effect immediately on the death of the husband, as set forth in *Land* v. *Shipp, supra;* 6 Va. Law Reg. 165; Harrison on Wills and Adm., sec. 37(1), p. 42; Minor on Real Prop., 2 ed., vol. 1, sec. 303, p. 389. This amendment was adopted by the Senate without a dissenting vote

on January 27; it was adopted by the House without opposition on March 12; and it was approved by the Governor on April 1, 1938.

This section, with the 1938 amendment in italics, is as follows: "Jointure in bar of dower; effect of conveyance or devise.—If any estate, real or personal, intended to be in lieu of dower, shall be conveyed or devised for the jointure of the wife, *to take effect in profit or possession immediately upon the death of her husband and continue during her life at least,* such conveyance or devise shall bar her dower of the real estate, or the residue thereof, and every such provision, by deed or will, shall be taken to be intended in lieu of dower, unless the contrary intention plainly appear in such deed or will, or in some other writing signed by the party making the provision." Acts of 1938, p. 745.

The executor contends that, under the doctrine of *stare decisis,* the decision of this case is controlled by the principles stated in *McDonald* v. *McDonald, supra.* This contention is sound if we apply the doctrine. However, "the rule of *stare decisis* is entitled to the greatest respect, and under our system of jurisprudence is an essential feature of the administration of justice. Where a decision, and especially a line of decisions, has been acquiesced in, where it has been followed in other cases and has become a rule of property, and men have, in the conduct of affairs, learned to respect and conform to it, it becomes of especial, and indeed of binding, force, and should not be disturbed, except by the interposition of legislative power. But we do not consider that the circumstances adverted to as lending force to a judicial interpretation of a statute, and which may be of so strenuous a nature as to preclude further enquiry into the correctness of the adjudication, apply to the case before us. We have here a single judgment followed in no other case, rendered by a bare majority of the court—two of the judges dissenting—and placing a construction upon the statute law involved in it, which, we think, palpably erroneous and contrary to public policy, * * * ." *Postal*

*Tel. Cable Co.* v. *Farmville, etc., R. Co.,* 96 Va. 661, 32 S. E. 468.

Guided by the foregoing principle, we think that so much of the opinions in *McDonald* v. *McDonald, supra,* and *Tusing* v. *Tusing,* 169 Va. 769, 194 S. E. 676, which hold that jointure includes an estate conveyed to the wife to take effect *in praesenti,* and not necessarily to take effect in profit or possession immediately on the death of the husband, should be and are hereby overruled. See *Shackelford* v. *Shackelford,* 181 Va. 869, 27 S. E. (2d) 354.

There is another reason why the decree in the present case should be reversed. The deed, offered as conclusive proof to establish the intention that it was intended for jointure and to be in lieu of dower, was a simple deed of bargain and sale executed by parties other than the husband conveying the property described to Mrs. Fuller. The pertinent language set forth is as follows:

"THIS DEED Made this the 19th day of May, 1938, between William A. McCanless, Jr., and Katherine S. McCanless, his wife, parties of the first part, and Corrie Allen Fuller, party of the second part, WITNESSETH: That for and in consideration of the sum of Eight Thousand and Five Hundred ($8,500.00) Dollars *cash in hand paid by the party of the second part* to the parties of the first part at and before the sealing and delivery of this deed the receipt whereof is hereby acknowledged. * * * ." (Italics supplied.)

No language in the deed even suggests that the provision was intended to be for jointure of the wife and in lieu of dower. The executor further alleged that the statement in the deed as to the payment of consideration was false and that it in fact was paid by Dr. Fuller. In order to establish this allegation, it became necessary for the executor to resort to parol proof of the facts and circumstances under which the consideration was paid and the deed delivered. These facts and circumstances were set forth in the answer of the widow and established by parol testimony introduced by her. This admission and the parol testimony show that Dr. Fuller did pay the consideration but that he did not intend

the conveyance to his wife to be for jointure and in lieu of dower.

■■ The executor was compelled to use a part either of the admission in the answer or of the parol testimony to prove the allegation that Dr. Fuller paid the consideration for the conveyance. It concedes this to be true and yet contends that all other facts and circumstances set forth in the admission or established by parol testimony are inadmissible. If the admission or the parol testimony, relied upon by the executor to vary the declaration in the deed, is excluded, then no part of the statute is applicable. If any parol testimony is admissible, then all the contemporaneous facts and circumstances established by such testimony must be taken into consideration. It would be contrary to fair dealing, unjust and unconscionable to permit one party to use facts and circumstances, established by parol testimony, favorable to his contention, and deny the other party the right to use other facts and circumstances, established by the same parol testimony, and occurring simultaneously, to support his contention. When one party is permitted to introduce extrinsic evidence to contradict or vary the statements or terms of a written instrument, the other party has a right to introduce evidence on the same subject matter. *Richeson* v. *Wood*, 158 Va. 269, 163 S. E. 339, 82 A. L. R. 1189.

■■ Extrinsic evidence may be admitted to prove the circumstances under which a contract was made, where, without the aid of such evidence, it cannot be applied to its proper subject matter. This rule the executor invoked, but the rule does not permit the executor to use only such part of the parol testimony as may be favorable to it and reject that part which is unfavorable.

The decree from which this appeal was allowed is set aside and reversed, and the case is remanded for such further and other proceedings as may be appropriate and not inconsistent with the views herein expressed.

*Reversed and remanded.*

Holt, J., dissenting.