# Richmond

PUBLIC FINANCE CORPORATION OF LYNCHBURG v. CYRUS B. LONDEREE
AND BESSIE LONDEREE.

January 26, 1959.

Record No. 4878.

Present, Spratley, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*William Rosenberger, Jr. (Perrow & Rosenberger,* on brief), for the plaintiff in error.

*Harold B. Singleton (Shrader & Singleton,* on brief), for the defendants in error.

*Virgil R. Goode* and *Howard W. Dobbins (Wallerstein, Goode, Adamson & Dobbins,* on brief), for Virginia Consumer Finance Association, amici curiae.

MILLER, J., delivered the opinion of the court.

■ This action was instituted in the county court of Amherst county, Virginia, by Public Finance Corporation, hereinafter at times called plaintiff, against Cyrus B. Londeree and Bessie Londeree, hereinafter called defendants, to recover $555.83, with interest. In the warrant it was alleged that the sum sued for was owing by defendants because they obtained money from the corporation "by false representation."

On April 27, 1957, judgment was awarded plaintiff for $555.83 with interest from date. On appeal by defendants to the circuit court, all matters of law and fact were submitted to the court for decision and from a judgment in favor of defendants, the plaintiff obtained a writ of error.

Summarized, the pertinent evidence is as follows:

On November 14, 1955, defendants obtained a loan of $600 from the Public Finance Corporation, a licensee under the small loan act. Sections 6-274 to 6-338, Code 1950. The principal was repayable, with interest included, in monthly installments. During February, 1956, this indebtedness had been reduced to $264.28, and on February 29, 1956, defendants applied to the corporation for a loan of $600. It was understood that if and when this new loan was made, $264.28 would be used to pay the balance due plaintiff and the residue of $335.72 paid to defendants.

On this day Londeree informed plaintiff's representative that he was indebted to Peoples National Bank for $149.00 and owed State taxes of $81.91, but it does not appear that he then advised plaintiff that he was otherwise indebted, nor was he asked if he owed other debts. Following this interview, plaintiff, as is its usual practice, contacted the retail credit bureau to obtain such information as was available from that local informant as to defendants' credit standing. No information of moment was obtained from that agency. On March 1, 1956, defendants appeared at the corporation's office to consummate the transaction, but before the loan was made, plaintiff required defendants to fill out and execute a financial statement. The writing, as executed by defendants, reads in part as follows:

"Financial Statement

Date 3/1/56

"To Public Finance Corporation of Lynchburg:

For the purpose of inducing you to extend credit by making a loan to me or refinancing for me the loan, if any, mentioned in 1 below, and to show my ability to repay same, I hereby furnish the following information:

Notwithstanding any previous dealings had with you or the value of any property mortgaged, I UNDERSTAND THAT IN MAKING THIS LOAN YOU ARE RELYING ON MY FINANCIAL CONDITION AS SHOWN BY ME IN THIS STATEMENT.

1. I/we owe the above named company now $264.28"

Listed as creditors under paragraphs numbered 4 and 5 are the Peoples National Bank, loan, $149; State taxes $81.91. The three items of indebtedness listed in the statement are then summarized as follows:

"5. I/we hereby state, affirm, represent and warrant that my total indebtedness and liabilities on the date do not exceed $495.19 NO ONE HAS SUGGESTED THAT I OMIT ANY OF MY INDEBTEDNESS FROM THIS STATEMENT."

The statement concludes with the following authorization and assertions:

"8. You may contact and inquire of my references, creditors, my employer, present and future, and visit my home concerning credit and collection, either before or after the loan is made. We owe no other debts than stated above.

S/ Cyrus B. Londeree

S/ X Bessie Londeree"

The last line, "We owe no other debts than stated above," was, at the direction of plaintiff's agent, written into the form by Cyrus B. Londeree before he and his wife signed the instrument.

Upon execution of the statement, defendants then signed the usual form note in the principal sum of $600, payable with interest included, in twenty monthly installments of $37.53, and they also executed a deed of trust on their household goods and furniture. As authorized by § 6-301, 1956 Cum. Supp., Code 1950,[1] the note provided for payment of 2½ per cent per month on unpaid principal not in excess of $300 and 1½ per cent per month on the remainder of the principal.

Two payments of $37.53 were made by defendants before they defaulted and Cyrus B. Londeree filed his voluntary petition in bankruptcy on June 21, 1956, in which he listed the balance due plaintiff as one of the items of indebtedness.

The petition in bankruptcy disclosed that Londeree was indebted in the sum of $1,190, in excess of what he had listed in the financial statement, the greater part of which existed on March 1, 1956. Part of the excess consisted of an item of $300 that had been borrowed by defendants prior to March 1, 1956, from Household Finance Company, and part was represented by a balance of $269.50 owing on a loan theretofore obtained from Royal Loan Company. Additional smaller items, some incurred prior to March 1, 1956, made up the balance. No opposition to defendant's discharge in bankruptcy was interposed, and it was granted in due course.

Londeree was called as an adverse witness and asked if he did not know when he signed the financial statement that he was indebted to Household Finance Corporation and to Royal Loan Company. His answer was that he knew that he was indebted to those companies but in explanation of why he did not include those items on the statement, he said, "Well, I just didn't put them on there, didn't think about them at the time."

When the statement was offered in evidence by plaintiff § 6-314, Code 1950, was invoked by defendants, and they insisted that under its provisions, the statement was inadmissible. That section reads as follows:

"No written financial statement given by any applicant for a loan, or by any borrower, to a licensee under this chapter, shall be

---

[1] Section 6-301, a part of the Small Loan Act, is one of the sections amended by Acts 1956, ch. 71, p. 71, approved February 20, 1956, and effective from its passage.

received in evidence, or otherwise used, against such applicant, or borrower, in any proceeding to recover the indebtedness incurred in connection with which the statement was given; nor shall any such statement be used in opposition to the granting of a discharge in bankruptcy."

The court admitted the statement subject, however, to a final ruling on its admissibility after all the evidence had been heard. At the conclusion of the case it ruled that the last two lines of § 6-314, *i.e.*, "[N]or shall any such statement be used in opposition to the granting of a discharge in bankruptcy," were invalid because that provision invaded the field occupied by the Bankruptcy Act and was in effect an attempted amendment of that legislation. The court, however, found that clause to be severable from the other part of § 6-314 which it held to be constitutional. This resulted in the exclusion of the written statement, and the court then concluded that on the evidence plaintiff was not entitled to recover and judgment was entered for defendants.

By plaintiff's several assignments of error, it is in effect asserted that (1) the oral evidence, exclusive of the financial statement, establishes its right to recover, (2) § 6-314 is not applicable to this action, (3) § 6-314 is void because (a) it is in derogation of the Bankruptcy Act, (b) denies due process of law to plaintiff, and (c) is class legislation that denies equal protection of the law to plaintiff.

The evidence fails to show that Bessie Londeree made any oral representations before the financial statement was executed. Though it does show that the oral statements made by Cyrus B. Londeree about their indebtedness were not full and complete, yet they were not untrue. Nor does it appear from the testimony that on February 29 when the oral statements were made upon which a right to recover is now asserted that he made any statements or representations that he owed no debts other than the items thereafter included in the writing.

When fairly appraised, the oral statements made by Cyrus B. Londeree on February 29 are thus clearly insufficient to sustain a finding that they were untrue or that plaintiff relied upon them when it made the loan.

This brings us to the question of whether or not the provision of § 6-314 prohibiting the admission in evidence of the statement against a borrower is applicable to this character of action.

The identical amount of principal, *i.e.*, $555.83 owing by defendants after crediting the two monthly payments on the debt is the sum sued for. The only damage claimed to have been sustained by plaintiff is loss of the unpaid balance of the money allegedly advanced upon the representations contained in the financial statement. It evidently elected to proceed in tort against defendants and refrained from attempting to recover that sum in an action *ex contractu* because the contractual obligation of Cyrus B. Londeree had been discharged in bankruptcy. Yet its present claim arose out of the transaction and unless § 6-314 was intended to apply to this action, it is ineffectual and meaningless. That is necessarily true because if the action had been on the note and defendants' debt had been discharged in bankruptcy but the discharge not pleaded, or if it had not been discharged in bankruptcy, there would be no point in offiering the statement in evidence. It could be of no value in such an action. The word "indebtedness" as used in the act must be accorded its full scope and broad meaning—state of being indebted— so that the legislation may accomplish its obvious purpose.

The contention that this action is in tort and that an action of that character is not encompassed within the phrase, "in any proceeding to recover the indebtedness incurred in connection with which the statement was given," is lacking in substance and merit.

■ We agree with the conclusion of the trial court that the clause, "nor shall any such statement be used in opposition to the granting of a discharge in bankruptcy," is invalid because it is in effect an amendment of § 14(c)(3) of the Bankruptcy Act (11 U. S. C. 32(c)(3)). *International Shoe Company* v. *Pinkus*, 278 U. S. 261, 49 S. Ct. 108, 73 L. ed. 318; *Hammond* v. *Lyon Realty Co.*, 59 F. 2d 592; *In re Mills*, 76 F. Supp. 764. We also find, as did the trial court, that the quoted provision is clearly severable from the other part of the section. 17 M. J., Statutes, § 28, p. 270.

Upon invalidation of the last two lines of § 6-314 and their severance from the remaining parts of the Act, there is nothing in the legislation in conflict with § 17 of the Bankruptcy Act (11 U. S. C. 35), which provides that a "discharge in Bankruptcy shall release a bankrupt from all his provable debts, * * * except such as * * * are liabilities for obtaining money or property by false pretenses or false representations, * * *." Though § 6-314 does forbid the admission of the statement in evidence against an applicant or borrower from a small loan company, yet it does not assume to release the

borrower from his liability. It merely prescribes a rule of evidence in State courts in case recovery of the indebtedness is sought from the borrower.

Plaintiff's next contentions are that the section is violative of the Federal and State Constitutions, and its position in this respect is supported by a comprehensive *amicus curiae* brief filed by the Virginia Consumers Finance Association, consisting of a membership of one hundred and ninty-three small loan companies.

It is earnestly asserted that the section is violative of the Fourteenth Amendment, § 1, Constitution of the United States, and §§ 1, 3, and 11 of the Constitution of Virginia because it deprives plaintiff of its property without due process of law and operates to destroy plaintiff's property rights and interests for defendants' benefit. This position is, however, untenable because § 6-314 deprives plaintiff of no property rights or interests; it is merely a rule of evidence.

The provision rendering the statement inadmissible against the borrower is quite similar to a restrictive rule of evidence formerly contained in § 8-293, Code 1950. That section, before its amendment by Acts 1958, ch. 380, unconditionally declared "that in an action to recover for a personal injury or death by wrongful act or neglect, no ex parte affidavit or statement in writing other than a deposition, * * * shall be used to contradict him as a witness in the case." Though the ex parte statement was voluntarily made by the injured party, yet it could not be thereafter used though affiant's adversary might be dependent upon it to establish his non-liability on an asserted claim. *Washington, etc., Railway* v. *Weakley*, 140 Va. 796, 125 S. E. 672; *Saunders* v. *Hall*, 176 Va. 526, 11 S. E. 2d 592; *Alspaugh* v. *Diggs*, 195 Va. 1, 77 S. E. 2d 362; *Solterer* v. *Kiss*, 193 Va. 695, 70 S. E. 2d 329; 22 A. L. R. 2d 1269. It will be observed that § 8-293 did not prohibit the admission in evidence of a prior inconsistent oral statement, nor does § 6-314 prohibit the admission of oral statements made by the applicant or borrower to establish the company's right to recover. Thus neither statute would deny a litigant the right to prove and establish his asserted defense or claim, but merely limits the evidential means by which that might be accomplished.

As no constitutional sanction of a rule of evidence is involved, on that ground there can be no doubt of the validity of the restriction imposed by this legislative rule of evidence. 1 Wigmore, *Evidence*, 3d ed., § 7, p. 208.

■ Finally the legislation is challenged as violative of the clause in the Fourteenth Amendment that guarantees "equal protection of the laws" and of § 63 of the Constitution of Virginia which forbids the General Assembly to "enact any local, special or private law * * * [g]ranting to any private corporation, association or individual any special or exclusive right, privilege or immunity."

The legislation is presumed to be constitutional and unless its invalidity in that respect plainly appears, it is our duty to declare it valid and operative.

"It is an elementary principle of constitutional law that the General Assembly has plenary power except so far as restrained by the Constitution of this State and the Constitution of the United States. It is only where an act is plainly repugnant to some constitutional provision that the court can declare it null and void. If there be reasonable doubt whether the act violates the fundamental law, that doubt must be resolved in favor of the act. *Almond* v. *Gilmer*, 188 Va. 822, 834, 51 S. E. 2d 272, 276." *Almond* v. *Day*, 199 Va. 1, 6, 97 S. E. 2d 824. *Dean, et al.* v. *Paolicelli, et al.*, 194 Va. 219, 72 S. E. 2d 506.

The dominant legal question presented is: Does the statute, when tested by the provisions of the constitutions, deny to small loan companies the equal protection of the law or deny to them any right, privilege or immunity given to others similarly situated? Stated otherwise, is the prohibition imposed upon small loan companies forbidding introduction of these financial statements in evidence in an action against the borrower, when no such restriction is imposed upon others, a reasonable and natural classification, or is it so unjust, arbitrary and discriminatory as to deny to the specified class "equal protection of the laws" or constitute what is termed "private or class legislation?"

The most satisfactory short definition of "special law" condemned by the Virginia Constitution as class legislation, and in that respect also violative of the "equal protection" clause of the Federal Constitution is found in *Budd* v. *Hancock*, 66 N. J. L. 133, 48 A. 1023, repeated in *Van Cleve* v. *Passaic Valley Sewerage Commissioners*, 71 N. J. L. 183, 58 A. 571, and quoted with approval in *Martin's Ex'rs* v. *Commonwealth*, 126 Va. 603, 610, 102 S. E. 724. It follows:

"A law is 'special' in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or

things from those upon which, but for such separation, it would operate."

Yet satisfactory as this definition may be, it was pointed out in *Martin's Ex'rs* v. *Commonwealth, supra,* at page 610, and in *Joyner* v. *Centre Motor Co.,* 192 Va. 627, 66 S. E. 2d 469, that no mere definition can furnish a certain answer to the question of what it takes to constitute "an arbitrary separation." In *Joyner* v. *Centre Motor Co., supra,* in commenting upon the above definition and quoting from *Martin's Ex'rs, supra,* it was said:

"Reasonably satisfactory as that definition is, we must still, in each instance, determine if the Act makes an 'arbitrary separation' of 'persons, places or things.' For as stated by Judge Kelly at p. 610 in *Martin* v. *Commonwealth, supra,* whether there has been such an 'arbitrary separation * * * must in the nature of things depend upon the person [purpose] and subject of the particular act and the circumstances and conditions surrounding its passage.' "

In a brief opinion made a part of the record, the trial judge states the purpose and history of the legislation classifying small loan companies, of which this act is a part, as follows:

"The history of this legislation is well known to this court. To state it briefly it goes back some years to the time when the Russell Sage Foundation undertook to find a way to eliminate the then existing evil of salary buying and other extortionate schemes to rob the poor, ignorant and people in desperate financial circumstances. It was then found, and most of the states have since discovered, that the most effective way to eliminate these evils is to set up a counter plan in the form of an agency to satisfy the needs of the people.* * *"

The court then calls attention to the fact that as an inducement to financial institutions who made loans to this class of citizens, and to eliminate the evils a classification for small loan companies was determined upon and an interest rate which only small loan companies were permitted to collect was allowed as an inducement to capital to eliminate salary buying and like evils. The evils referred to by the court which are relied upon to justify the legislative classification are of common knowledge. They are elaborated upon and discussed in decisions and legal articles having to do with loan companies, their operation and practices. Among the evils was the practice by some unscrupulous companies and institutions to encourage at times or induce borrowers to make false financial state-

ments; and then, armed with these writings, if the debtor filed a petition in bankruptcy, the lender still occupied a rather secure position. It could quite probably successfully oppose the bankrupt's discharge or threaten to oppose his discharge and thus induce him to pay or execute a new promise to pay. If the bankrupt secured a discharge, the creditor could then obtain a judgment against him in a tort action for obtaining money by false representations. By inducing the execution of a false statement and then having resort to these several courses of action, the creditor occupied a preferred status and was reasonably certain to collect from the debtor by one means or another. Discussions on the existence of this practice and its evils are found in 32 Indiana Law Journal 151, 39 Minnesota Law Review 673, and decisions there cited. Also pertinent in this respect is *In re Anderson*, 104 F. Supp. 599.

It is well recognized and commonly known that small loan companies generally serve and are patronized by a clientele not usually served by other financial and lending institutions. The needs, circumstances, conditions, resources and financial worth of their applicants are not generally ·similar to those of persons who patronize other lending institutions. Under the State's police power these facts, circumstances and conditions furnish ample justification and reason for classification and regulation by the State to protect the morals and general welfare of its citizens. *Sweat* v. *Commonwealth*, 152 Va. 1041, 148 S. E. 774; 149 A. L. R. 1424. The challenged section has substantial reference to the classification of small loan companies because it tends to protect the borrower from any unscrupulous lender and to discourage the undesirable practice that was found to have been indulged in at times to induce the borrower to make a false statement. Though the legislation does at times impose a hardship upon many honest and upright loan companies, yet it is clearly within the province of the General Assembly to determine if the worth of the legislation outweighs its hardships and whether or not it should be enacted.

The classification being reasonable and § 6-314 being pertinent to the purposes and objects sought to be accomplished by the classification, its validity may not be successful challenged.

*Affirmed.*